IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

―――――――――――――――

No. 00-50839

―――――――――――――――

JOHN H. SHIELDS; HUNTER SCHUEHLE,

Plaintiffs-Appellants,

versus

GALE NORTON, Secretary, United States Department of Interior;
JAMIE RAPPAPORT CLARK, Director, United States Fish &
Wildlife Service; SIERRA CLUB,

Defendants-Appellees.

―――――――――――――――

Appeal from the United States District Court
For the Western District of Texas

―――――――――――――――

April 26, 2002

Before JOLLY, HIGGINBOTHAM, and PARKER, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Hunter Schuehle pumps water from the Edwards Aquifer in Texas. He challenges the constitutionality of the Take Provision of the Endangered Species Act, 16 U.S.C. § 1538(a)(1)(B), as applied to the endangered and threatened species living at San Marcos and Comal Springs. Schuehle seeks a declaration that the Take Provision exceeds Congress' power under the Commerce Clause. The district court granted summary judgment to Appellees Gale Norton, Jamie Rappaport, and the Sierra Club, concluding that the Take Provision was a valid exercise of Congress' enumerated powers. These rulings

1

followed the district court's decision that Schuehle has standing and the case is ripe. We are persuaded that this suit does not present justiciable issues and the district court was without jurisdiction to decide the case.

I

The Take Provision, Section 9(a)(1)(B) of the ESA, makes it unlawful for any person to "take" a listed species. To "take" a species is defined by the ESA as to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect" a member of a listed species. To "harm" is defined by regulation to mean "an act which actually kills or injures wildlife."[1] Violation of the Take Provision can result in civil penalties of up to $25,000 for each knowing violation, criminal penalties of up to $50,000 and imprisonment for up to one year.

The Secretaries of Commerce and the Interior jointly administer the ESA through the National Marine Fisheries Service and United States Fish and Wildlife Service. The Secretary of the Interior has statutory authority to promulgate regulations listing and defining the critical habitats of species that are either endangered or threatened.[2] This action triggers specific protections for the listed species and their defined habitat.[3] The

---

[1] 50 C.F.R. § 17.3.

[2] 16 U.S.C. §§ 1533, 1536.

[3] 16 U.S.C. § 1536(a)(2).

Edwards Species at issue in this case are rare fish, amphibian, and plant species found only in the San Marcos and Comal Springs area of Texas. They are not purchased, sold, or exchanged commercially.

The Edwards Aquifer, a 175-mile long underground aquifer, is recharged from surface waters and rainfall seeping through porous earth. Water from the aquifer is used by thousands of farmers to irrigate millions of dollars worth of crops, by over two million people as their primary source of water, and by thousands engaged in business in Central Texas. The aquifer is also important to the Edwards Species.

The aquifer is regulated by the Edwards Aquifer Authority. Schuehle at relevant times was both a member of the board and a pumper of water from the aquifer.

II

This suit alleges that Appellees have threatened to sue area water pumpers for ESA violations based upon the theory that the pumping of water from the Edwards Aquifer harmed the Edwards Species and is a "take" for purposes of the ESA. On January 27, 1999 Judge Hippo Garcia dismissed Shields and transferred the case to Judge Lucious Bunton. Judge Bunton concluded that the case was ripe for review and that Schuehle had standing. On the merits he granted summary judgment, holding that in enacting the Take Provision, Congress validly exercised its Commerce Clause and treaty powers. Finally, he rejected the contention that the ESA citizen suit provision unlawfully delegated authority. Shields and

3

Schuehle appeal.

III

Article III of the Constitution confines federal courts to the decision of "cases" and "controversies." A case or controversy must be ripe for decision, meaning that it must not be premature or speculative.[4] That is, ripeness is a constitutional prerequisite to the exercise of jurisdiction.[5]

A suit for declaratory relief, while allowing a party to anticipate a suit and seek a judicial resolution, must nevertheless meet this keystone limitation. In hornbook form, a declaratory action must be ripe in order to be justiciable, and is ripe only where an "actual controversy" exists.[6] An actual controversy exists where "a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests."[7] Ordinarily whether particular facts are sufficiently immediate to establish an actual controversy yields answers on a case-by-case basis.[8] Whether a declaratory action is ripe, by its very structure, pushes against our insistence upon mature disputes. That

---

[4] *United Transportation Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000).

[5] *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967).

[6] 28 U.S.C. § 2201 (a) ("In a case of actual controversy within its jurisdiction . . . .")

[7] *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000).

[8] *Id.*

4

is, it "contemplate[s] an *ex ante* determination of rights that exists in some tension with traditional notions of ripeness."[9]

The district court found that "[a]lthough the ripeness determination is a close one," Schuehle's action was ripe for review.[10] The district court relied heavily upon evidence that Schuehle has curtailed his irrigation pumping to his financial detriment, in response to threats of prosecution and litigation by Appellees.[11] The district court found that the ESA "effectively imposes immediate obligations on Edwards pumpers" and concluded that "Schuehle should not be placed in the unenviable position that, in order to test the constitutionality of the ESA, he must expose himself to civil and criminal liability."[12] The court noted that the Sierra Club sent Schuehle notices of intent to sue, holding that the letters constituted "more than an imaginary threat to his ability to continue pumping."[13]

IV

The threat of litigation can establish a justiciable

---

[9] *Orix*, 212 F.3d at 896 (*quoting Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 692 (1st. Cir. 1994)).

[10] Op. at 15.

[11] *Id*. at 14.

[12] *Id*. at 15.

[13] *Id*.

controversy if it is specific and concrete.[14] We look to the practical likelihood that a controversy will become real.[15] Because no action may be commenced under the citizen suit provision of the ESA until sixty days after written notice of the violation has been given to the alleged violator,[16] the district court properly determined that Notices of Intent to Sue sent by the Sierra Club in 1990, 1994, and 1998 are "the first step required in the litigation process" and were sent to induce the recipient to modify his actions so to avoid violation of the ESA.[17]

The district court cited two letters sent from the Sierra Club to "individuals and entities . . . withdrawing or diverting water from the Edwards aquifer, alleging that such actions constituted violations of the ESA."[18] The first letter, sent on April 12, 1990, stated that the cumulative impact of the pumping threatened the Edwards Species, alleged violations of section 9 of the ESA, and stated its intention to file suit if necessary to correct these violations.[19] The second letter, sent on April 15, 1994, stated that the actions of the pumpers "pose[d] a substantial and imminent

---

[14] *Orix*, 212 F.3d at 897.

[15] *Id.*

[16] 16 U.S.C. § 1540(g)(2)(A).

[17] Op. at 14.

[18] Op. at 5-6.

[19] Op. at 6.

threat of jeopardy to the continued existence of endangered and threatened species and to the public health and safety of 1.5 million people."[20] This letter also alleged violations of section 9 of the ESA, and stated that the Sierra Club would "take prompt legal action to obtain judicial remedies for this emergency."[21]

When he first joined this suit, Schuehle did not make it clear whether he was suing in his official capacity as a member of the Edwards Aquifer Authority Board or as an individual pumper. Schuehle conceded that he lacked authority to sue on the EAA's behalf, and the district court properly held that Schuehle lacked standing to sue in his official capacity.[22] The question before us, then, is whether there is a specific and concrete threat of litigation against Schuehle in his individual capacity sufficient to render his declaratory action an actual controversy and thus ripe for judicial review.

A notice of intent to sue Schuehle individually as distinguished from the board could be a sufficiently specific and concrete threat. But Schuehle has not demonstrated that he received such a notice. We are persuaded that neither the 1990 letter nor the 1994 letter are sufficiently specific and concrete. The 1990 letter lists Schuehle's partnership but not Schuehle in his

---

[20] *Id.*

[21] *Id.*

[22] Op. at 16.

individual capacity. Schuehle does not claim that the letter was directed to him. Rather he suggests that he may have received the letter from a third party. The 1994 letter does not list Schuehle, his partnership, or the EAA. Schuehle says only that he received it "directly or indirectly." Attributing the letter to the partnership as effective to Schuehle individually is of no moment. Significantly, more than four years lapsed before Shields filed this suit that Schuehle later joined. Moreover the Sierra Club by letter disclaimed any plan to sue Schuehle individually. While alone it is also of little import, such a disclaimer reenforced by these years of inaction hollows any "threat," and pulls it short of immediate.

The Sierra Club also sent a letter in 1998 but it was addressed solely to the EAA and its board members in their official capacities and Schuehle has no legal right to sue on behalf of the EAA. Pursuant to the ESA, the Sierra Club would be required to send Schuehle a notice letter at least sixty days before it could bring a suit against him.[23]

V

We are constrained to conclude that the Sierra Club's actions directed toward Schuehle were not a sufficient threat of litigation. If it is to be found, the requisite threat must be inferred from past litigation by the Sierra Club against other

---

[23] 16 U.S.C. § 1540(g)(2)(A).

pumpers and from a 1988 newspaper article that quotes a United States Fish and Wildlife Service employee stating that "law enforcement is always an option" if the Edwards Species are harmed. But this is not enough.

It does not establish a specific, concrete threat of immediate litigation sufficient to establish the controversy requisite to declaratory judgment. Whether the Sierra Club will sue Schuehle hinges upon contingencies not easily anticipated, given that it is unclear from the record whether Schuehle pumps a significant amount of water from the aquifer, whether he has a permit from the EAA to do so, or specifically how he responded to any of the "threats." Schuehle's claim that he stopped pumping water from the aquifer in response to these "threats" in itself might establish a controversy, if not for their emptiness exposed by years of inactivity since the alleged "threats" were made and the lack of evidence that a threat was in fact made against Schuehle but not carried out because of his conforming conduct.

In short, we have some saber rattling, but nothing more, and we are left with the unease that proceeding to the merits is more likely than not the offering of one answer to a hypothesis—a possible but not sufficiently possible injury. This is where a court of limited jurisdiction must stop. We must decide the difficult questions when deciding a case or controversy requires us to do so. At the same time, we must not proceed until the issue is ripe – until we have that case or controversy.

9

It follows that the district court erred in finding the requisite actual controversy. We VACATE its judgment and REMAND with instruction to dismiss the amended complaint for lack of jurisdiction.