IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————————

No. 02-30023

————————————————

VENATOR GROUP SPECIALTY, INC.,

Plaintiff - Appellant,

v.

MATTHEW/MUNIOT FAMILY, LLC, ET AL.,

Defendants,

MATTHEW/MUNIOT FAMILY, LLC,

Defendant - Appellee.

————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana

————————————————

February 20, 2003

Before DAVIS, BENAVIDES, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

This commercial leasehold case presents a ripeness question. Appellant Venator Group Speciality, Inc. (Venator) initiated this declaratory judgement action against Appellee Matthew /Muniot Family seeking an order declaring Venator's legal obligations pursuant to a commercial lease executed in 1938 by the parties' predecessors in interest. The terms of the 1938 lease potentially require Venator to make substantial alterations to the property upon the termination of the lease in January 2004.

Venator sought a declaration prior to the termination of the lease, asserting that the terms of the lease are impossible to perform, commercially impractical, and would require Venator to violate the law. Appellee filed a motion to dismiss, asserting the action was premature as Venator's obligations under the lease remain executory until the lease term expires. The district court granted Appellee's motion to dismiss finding the potential dispute between the parties concerning Venator's obligations to alter the property lacked sufficient immediacy to constitute an actual controversy. Appellant appeals from this ruling.

I.

In 1938 the Woolworth Company (Woolworth) sought to build a Woolworth store on several lots of commercial property located along the intersection of Canal and North Rampart Streets in New Orleans. Towards that end, Woolworth executed multiple leases with the various owners of the lots Woolworth desired to occupy. Of these leases, the lease which is primarily at issue here is the lease to which the Matthew /Muniot Family is the successor in interest (MMF lease). The MMF lease stipulates the terms of occupancy for the lot located at 106 North Rampart Street. At the time of the execution of the lease a three-story building stood on the leasehold property, and a three-foot alley extended behind the building. The alley was commonly owned for the use and privilege of those property owners whose lots fronted North Rampart Street. The terms of the MMF lease permitted Woolworth

2

to demolish the existing building and enclose the alley, so as to construct a much larger building that was contemplated to extend, and indeed does extend, beyond the property line of 106 North Rampart. Thus, the resulting Woolworth Building connects the 106 North Rampart lot with other separately owned lots and encompasses the property which was once the common alley. However, the lease also provides in pertinent part that:

> [1] Tenant shall, at the expiration or termination of this lease...at its own cost and expense, construct new dividing walls on the interior property lines separating the demised premises from adjoining property, provided Landlord requests Tenant in writing to do so within sixty days of the expiration or termination of this lease...

> [2] Tenant agrees at the expiration of this lease...to re-establish at its own cost and expense, the common alley-way now existing and adjacent to the premises herein demised and adjoining properties to the southwest...

> [3] Any and all improvements or alterations made in or constructed upon the said premises and /or any new building or buildings erected thereon... shall be constructed in conformity with all requirements of the State of Louisiana, City of New Orleans, or other public authority.

Thus, the lease on its face would seem to require that, upon the termination of the lease, the lessee must re-establish a common alleyway along the parameter of the lots. Also, if the lessor so requests, the lessee is required to restore the interior walls delineating the property boundaries. Both of these obligations are explicitly limited by any applicable legal restrictions in

3

place at the time of the termination of the lease. The MMF lease term expires January 31, 2004.[1]

Contemporaneous with the inception of the MMF lease, Woolworth executed a similar lease concerning additional parcels of commercial property owned by the Simon U. Rosenthal Company (Rosenthal lease). The Rosenthal lease also contained language concerning the restoration of the property to its free-standing and alley-endowed pre-lease condition at the termination of the lease.

In 1997, Woolworth ceased its retail operations nation-wide, and Venator became the successor to Woolworth's interest in the leases executed in connection to the 1938 construction of the Woolworth Building. In 1999, the Rosenthal lease expired and the lessor's successor in interest subsequently brought suit against Venator seeking to invoke the provisions of the lease requiring Venator to restore the property to its pre-lease conditions. The suit was eventually resolved by a settlement in which Venator purchased the Rosenthal leasehold property.

In March 2001, Venator initiated this action seeking a declaratory judgement with respect to its obligation to make

---

[1] The original lease term extended to July 1969, and was three times renewed, twice for a total of twenty-five additional years, and finally in 1994 the lease was extended an additional ten years. The provisions concerning the restoration of the property to its pre-leasehold condition were included in each subsequent renewal.

4

alterations to its leasehold properties pursuant the MMF lease. In its complaint Ventator alleged that the interior walls and alleyway provisions of the MMF lease were impossible to perform, commercially impractical, and would require Venator to violate the law. Appellee filed a Rule 12(b) Motion to Dismiss, arguing that the controversy at hand was not ripe for adjudication. The district court granted the motion to dismiss and Appellant appeals from that ruling.

## II.

The question before this Court is whether the district court properly dismissed Appellant's declaratory judgement action, and we review that decision for abuse of discretion. *Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995), *Gabriel v. City of Plano*, 202 F.3d 741, 744 (5th Cir. 2000). Generally, the decision to grant declaratory relief is statutorily committed to the district court's discretion, even where the suit would otherwise meet the requirements of subject matter jurisdiction. *Wilton,* 515 U.S. at 286.

However, in the case at bar, the district court dismissed Appellant's complaint solely on justiciability grounds, finding that the complaint failed to "present a substantial controversy of such immediacy that a declaratory judgement is warranted," and this court reviews *de novo* the question of whether a controversy is ripe for adjudication. *Orix Credit Alliance, Inc. v. Wolfe,*

5

212 F.3d 891, 895 (5th Cir. 2000)(holding that the issue of ripeness in a declaratory action is a question of law which the Court of Appeals reviews *de novo*); *see Shields v. Norton,* 289 F.3d 832 (5th Cir. 2002) (applying *de novo* review to a district court determination that an action for declaratory judgement was ripe for adjudication).

In the declaratory judgement context, whether a particular dispute is ripe for adjudication turns on whether a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests. *Orix Credit Alliance*, 212 F.3d at 896; *see also*, *Chevron U.S.A., Inc. v. Traillour Oil Co.*,987 F.2d 1138, 1153(5th Cir. 1993). Here, the district court determined that the case at bar was unripe for two reasons.[2]

---

[2] Appellant contends that the district court applied the wrong standard in deciding whether the issue at bar was ripe for adjudication. In asserting this argument, it appears to this court that Appellant is primarily challenging the district court's use of the language "premature" as opposed to the language "actual controversy." However, the district court opinion makes clear that the district court used the term "premature" to connote that the controversy was not ripe for adjudication, and thus was not an "actual controversy" within the bounds of the Article III case or controversy requirement. The district court stated that, " 'an actual controversy exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." ' " *Venator Group Specialty, Inc. v. Matthew/Muniot Family,* No. 01-0673, at 3 (*quoting Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (*quoting Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490)(5th Cir. 1986)). Having identified the correct standard for determining ripeness, the district court went on to find that in the case at hand the case was premature, as it did not present, "a substantial controversy of such immediacy that a declaratory judgement is warranted." *Id.*

6

First, the district court found that a suspensive condition barred justiciability. Also, the district court found that the controversy could not be evaluated because the lease at issue was to be construed in accord with the law in place in January 2004. We disagree on both counts.

A. *Suspensive Condition*

In evaluating the controversy now before us, the district court determined that a contingency exists which is prerequisite to Appellant's potential obligation under the MMF lease, and that the suspensive condition had not yet been met.[3] Specifically,

Thus, it seems clear that the district court used the appropriate standard for its ripeness analysis.

[3] The district court also implied that a suspensive condition presents an obstacle for finding the alleyway controversy to be ripe. The court found the alleyway dispute to be premature in part because, "the obligation to rebuild the alley will not arise, if ever, until the end of the lease in January 2004." The court's use of the phrase "if ever" would seem to suggest that other contingencies may impede the triggering of Venator's obligation under this provision. However, the alleyway provision states:

> Tenant agrees at the expiration of this lease...to re-establish at its own cost and expense, the common alley-way now existing and adjacent to the premises herein demised and adjoining properties to the southwest.

Thus, it would appear on the face of the lease that, excepting any applicable building code restrictions, Venator's obligation to rebuild the alley *will* arise in January 2004. While the condition under which Venator's obligation would arise is contingent upon the lease term ending, for a suspensive condition to bar justiciability in a declaratory judgement context, the condition must be more than merely executory. There must be some

7

the district court found that the potential dispute involving the interior wall provision of the MMF lease was unjusticiably premature because, "Venator's obligation to construct and rebuild walls and other portions of the building is conditional upon Matthew/Muniot making a request of it to do so [and] Venator does not allege that any such request has been made." Thus, the district court found the absence of a request by MMF determinative as to whether the interior wall controversy was ripe.

However, while the district court is correct that MMF must first invoke the interior wall provision of the lease before Venator's obligation will be triggered, it is important to remember that the very nature of relief in a declaratory context is *ex ante*. *Shields*, 289 F.3d at 835. The Declaratory Judgement Act offers the court an opportunity to afford a plaintiff equitable relief when legal relief is not yet available to him, so as to avoid inequities which might result from a delay in assessing the parties' legal obligations. *See* 28 U.S.C. §2201. Consequently, in deciding whether to grant declaratory relief, the court must necessarily assess the likelihood that future events will occur, but the court ought not require that those contingencies to have occurred at the time relief is sought, such

reason to doubt that it will occur. In the instant case there is no reason to doubt that the lease term will end.

8

as it would were it evaluating the availability of legal as opposed to equitable relief.  As the court explained in *Orix Credit Alliance*, the fact that certain contingencies pertaining to plaintiff's potential liability remain executory at the time of the declaratory suit does not defeat jurisdiction. *Orix Credit Alliance*, 212 F.3d at 897.  Instead, the court must assess the likelihood that the contingencies will occur and then determine, "whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention." *Id.* at 897.

Here, the physical circumstances surrounding MMF's plot of land make it very likely that MMF will invoke the interior wall provision of the lease. First, we note that the fact that MMF's property at present stands conjoined with and within separately owned parcels of commercial property creates a strong likelihood that MMF will require that interior walls be constructed. As Appellant contends, with significant intuitive appeal, it is difficult to imagine how MMF would be able to market and re-let its property as long as that property remains *inside* a portion of the Woolworth Building. Thus, it seems very likely that, at a minimum, MMF will use its ability to invoke the interior walls provision as leverage in negotiating with Venator for the sale or lease of MMF's portion of the Woolworth Building property. In any event, MMF is likely to claim its right to request interior walls to be built upon the termination of the lease term.

Moreover, although the district court found the absence of evidence that MMF has requested the walls be built to be determinative of the issue of ripeness with respect to this provision, we observe that MMF has no incentive to invoke the interior walls provision prior to the deadline stipulated in the lease, and so no inference may be made about MMF's intention to invoke the lease based on the fact that MMF has yet to act under that provision. Thus, the ripeness of the controversy surrounding Venator's obligation to rebuild the interior walls cannot rest entirely on the fact that MMF has not yet made such a request. The circumstances themselves give rise to a likelihood that such a request will be made, or forbearance of such a request will be used by MMF in negotiation over the disposition of the property. Therefore we find that the suspensive condition identified by the district court as barring justiciability is significantly likely to occur as to warrant judicial intervention.

### B. *Building Code of 2004*

The district court also found that the potential controversy surrounding Venator's obligation to rebuild the alley was premature for a second reason. The district court found that the extent of Venator's obligation to rebuild the alleyway cannot be assessed until January 2004, as that provision of the lease is to be construed in accord with the applicable building codes of January 2004. Thus, the district court found that Venator's

claims with respect to the impossibility, impracticality and illegality of constructing the alley to be speculative.[4]

We find, however, that the district court erred in holding that the fact that the lease provisions are expressly limited by the law of January 2004 defeats the district court's jurisdiction to evaluate claims under the lease. Generally, all contracts and leases must be construed in accord with applicable laws. Consequently, in any instance in which a party requests an *ex ante* declaration of rights under a contract, those rights must be ascertained in advance of the time contemplated by the contract, and consequently a theoretically different set of applicable laws may be in place. However, were this situation sufficient to render a party's claims speculative, it would be difficult to imagine how *ex ante* relief could ever be provided in a contract dispute. We find, therefore, that the district court erred in concluding the fact that the alleyway provision is to be resolved in accord with the law in place at the time the lease term ends renders the controversy unjusticiable.

### C.   *Plenary Review*

In addition to considering whether the reasons offered by the district court support a conclusion that the controversy at

---

[4] Venator extends its impossibility/impracticality/illegality argument to the interior walls provision as well, but the district court particularly identified the alleyway contention as speculative.

hand is not ripe for adjudication, this Court must also consider, under plenary review, whether the dispute at bar is ripe. As noted above, a declaratory judgement action is ripe when a substantial controversy of sufficient immediacy and reality exists between the parties having adverse legal interests. *Orix Credit Alliance*, 212 F.3d at 896.

In the case at bar, Appellant contends that the potential controversy between the parties concerning the interior walls and alleyway provisions of the lease are sufficiently immediate to warrant judicial intervention because the present ambiguity concerning Venator's legal obligations create a situation in which Venator is being presently injured. Venator claims that the building will remain empty and unmarketable until Venator's obligations concerning the walls and alley can be ascertained. Thus, Appellant argues, if Venator must wait until the lease terminates to begin litigation, Venator's interest in the property will continue to be injured throughout the delay and subsequent adjudication. Moreover, Appellant notes that the lease term *will* end, at which time Venator will be compelled either to act under the lease or stand in breach.

Appellees respond to Venator's immediacy argument by noting that Venator has provided no evidence that the property is presently unmarketable, or that Venator's interest in the property is presently being injured. However, this is an appeal

from a motion to dismiss a declaratory action. In reviewing the complaint with respect to evaluating justiciability, we must assume that allegations made by Appellant are true, as at this stage of litigation Appellant is required to allege facts consistent with its claim that it is presently incurring injury, but Appellant is not required to produce evidence sufficient to support the claim. *See Rowan Companies, Inc. v. Griffin,* 876 F.2d 26, 28 (5th Cir. 1989). Here, Venator alleges in its complaint that, "[d]evelopment of the remaining portion of the square which the plaintiff's building rests cannot go forward unless and until this matter is determined." Such an allegation is sufficient for the purpose of defeating a motion to dismiss with respect to this point.

III.

To conclude, we find that the district court erred in holding that the controversy at bar is insufficiently ripe as a matter of law. Moreover, because the district court offered no alternative or additional reason for denying declaratory relief, we must assume that the district court based its ruling on the erroneous ripeness conclusion, and consequently, we find the district court abused its discretion in granting Appellees' motion to dismiss. See *United States v. Delgado- Nunez,* 295 F.3d 494, 496 (5th Cir. 2002)(finding that where a district court determination rests on an erroneous legal conclusion, the

13

district court has, by definition, abused its discretion). We would emphasize, however, that in so finding we do not pass upon the merits of Appellant's plea for declaratory relief. We find only that the suit here is ripe for adjudication. Whether declaratory relief should be granted remains committed to the district court's discretion. *See Rowan Companies, Inc.,* 876 F.2d at 29(observing that although the district court erred in finding a declaratory action unripe, upon its subsequent assessment of the merits of the action, the district court is "free to exercise its discretion to maintain or reject the suit.").

Thus, for the reasons stated herein, the judgment of the district court is hereby REVERSED and the case is REMANDED for proceedings consistent with the rendering of this Court.