**PLUM CREEK TIMBER COMPANY, INC., Plaintiff,**

v.

**TROUT UNLIMITED, et al, Defendants.**

No. CV02–365–C–EJL.

United States District Court, D. Idaho.

March 31, 2003.

Richard C. Boardman, Robert A. Maynard, Perkins Coie, Boise, ID, for plaintiffs.

## ORDER

LODGE, District Judge.

On August 8, 2002, Plaintiff Plum Creek Timber Company, Incorporated initiated this action by filing a complaint seeking declaratory judgment as to the validity of their fish habitat conservation plan. In response, Defendant Trout Unlimited and Pacific Rivers Council filed a Motion to Dismiss for failure to state a claim upon which relief can be granted and lack of subject matter jurisdiction. *See* Fed. R.Civ.P. 12(b)(1), (6). The parties have filed responsive briefing and the motion is now ripe for the Court's consideration.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Plum Creek Timber Company, Incorporated ("Plum Creek") owns and manages approximately 1.6 million acres of land in Idaho, Montana, and Eastern

Washington. Approximately five years ago Plum Creek began developing a land management plan called the Native Fish Habitat Conservation Plan ("NFHCP"), which established habitat conservation on the lands owned by Plum Creek. In November of 2000, NFHCP was approved by the United States Fish and Wildlife Service ("FWS") and the National Marine Fisheries Service ("NMFS"). Federal approval of NFHCP included a thirty-year promise that Plum Creek's actions would comply with the Endangered Species Act ("ESA"). 16 U.S.C. § 1531 *et. seq.*[1] The plan called for the issuance of an incidental "take" permit which would insure that Plum Creek's actions under the NFHCP complied with the ESA.[2]

In response, on June 12, 2002, the Defendants Trout Unlimited and Pacific Rivers Council ("Pacific Rivers") sent a notice of intent to file suit against the FWS and the NMFS challenging their approval of NFHCP. Plum Creek then filed this action seeking declaratory relief as to the legality of the NFHCP. Specifically, Plum Creek asserts it is entitled to a determination that the NFHCP was properly approved in light of the large amounts of money expended in implementing the plan and in order to eliminate the risk and uncertainty raised by Defendants' notice of intent to sue. Plum Creek's complaint

names Trout Unlimited and Pacific Rivers as Defendants because they signed of the notice of intent to sue. Plum Creek also named FWS and NMFS as Defendants because they are responsible for the administration of different aspects of the ESA.[3] In response. Trout Unlimited and Pacific Rivers filed the instant motion to dismiss, pursuant to Rules 12(b)(1) and 12(b)(6), contesting whether this Court has proper jurisdiction to consider Plum Creek's claims.

## STANDARD OF LAW

1) *12(b)(1):*

▆▆▆ A Defendant may move to dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) in one of two ways. *See Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp.,* 594 F.2d 730, 733 (9th Cir.1979). The attack may be a "facial" one where the defendant attacks the sufficiency of the allegations supporting subject matter jurisdiction. *Id.* On the other hand, the defendant may launch a "factual" attack, "attacking the existence of subject matter jurisdiction in fact." *Id.* When considering a "facial" attack made pursuant to Rule 12(b)(1), a court must consider the allegations of the complaint to be true and construe them in the light

---

1. Section 10 of the ESA allows private parties to enter into arrangements with federal agencies where by the federal agency assures the private party ESA regulatory certainty in exchange for their conservation commitments.

2. The ESA prohibits the "take" of any endangered species. 16 U.S.C. §§ 1532(19), 1538. The "take" of a species is defined by the ESA as an action which would "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect" a member of a listed species. To "harm" is defined by regulation to mean "an act which actually kills or injures wildlife". 16 U.S.C. § 1538(a)(1)(B). Section 10 of the ESA allows certain agencies to issue a

"take" permit of a species where the "take" is incidental to an otherwise lawful activity, such as a habitat conservation plan. 16 U.S.C. § 1539.

3. The Secretaries of Commerce and the Interior jointly administer the ESA through the National Marine Fisheries Service and United States Fish and Wildlife Service. The Secretary of the Interior has statutory authority to promulgate regulations listing and defining the critical habitats of species that are either endangered or threatened. This action triggers specific protections for the listed species and their defined habitat.

most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989). A "factual" attack made pursuant to Rule 12(b)(1) may be accompanied by extrinsic evidence. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir.1987). When considering a factual attack on subject matter jurisdiction, "the district court is ordinarily free to bear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983) (citing *Thornhill*, 594 F.2d at 733). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill*, 594 F.2d at 733 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)).

However, "[t]he relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction ... where issues of jurisdiction and substance are intertwined. A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987) (quoting *Augustine*, 704 F.2d at 1077). In such a case, "the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine*, 704 F.2d at 1077 (citing *Thornhill*, 594 F.2d at 733–35). This case does not require the Court to resolve substantive issues in determining whether jurisdiction is proper.

2) *12(b)(6)*:

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the nonmoving party." *Wyler Summit P'ship v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 661 (9th Cir.1998) (citation omitted). However, the court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir.1994). There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997) (citation omitted). "'The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80, (1957); *see also Hicks v. Small*, 69 F.3d 967, 969 (9th Cir.1995). A claim is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief. *See United States v. Howell*, 318 F.2d 162, 166 (9th Cir.1963).

## DISCUSSION

Trout Unlimited and Pacific Crest assert several grounds exist upon which to dismiss this action: 1) lack of subject matter jurisdiction, 2) no actual case or controversy, and 3) failure to state a claim upon which relief can be granted. In the event jurisdiction is deemed to exist, Trout

Unlimited and Pacific Crest argue the Court should exercise its discretion and dismiss the complaint. Plum Creek maintains this Court has jurisdiction over this action pursuant to 5 U.S.C. §§ 701–706 (Administrative Procedure Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 2201 (declaratory judgment).

3. *Federal Jurisdiction:*

■ In general, before a court can consider the merits of a case the court must determine whether it has proper jurisdiction over the parties and claims and whether the parties have standing to pursue the claims. Federal courts are "courts of limited jurisdiction that have not been vested with unlimited open-ended lawmaking powers." *Scott v. Pasadena Unified School Dist.*, 306 F.3d 646, 654 (9th Cir. 2002) (citing *Northwest Airlines, Inc. v. Trans., Workers*, 451 U.S. 77, 95, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981)). Rather, our jurisdiction is circumscribed by the "case or controversy" requirement of Article III standing and by prudential considerations, such as ripeness and mootness, that arise as we navigate constitutional limitations on our judicial power. *Id.* (citing U.S. Const. art. III; *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138–42 (9th Cir.2000) (en banc)).

■ Thus, Article III, § 2 of the Constitution allows federal courts to adjudicating only those cases where the party bringing the claim has the requisite standing such that it can be said that there exists an actual case and controversy. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In order to establish standing, a plaintiff must first show that they have suffered an " 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560, 112 S.Ct. 2130 (internal quotation marks and citations omitted). Second, the injury must be "fairly traceable to the challenged action of the defendant." *Id.* (internal quotation marks omitted). Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury is remediable by appropriate court action". *Id.* The burden of establishing Article III standing remains at all times with the party invoking federal jurisdiction. *Id.* at 561, 112 S.Ct. 2130; *see also Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("It is the responsibility of ·the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.").

■ The requirement of Article III standing is a core component of the separation of powers. *Scott*, 306 F.3d at 654 (citing *Citizens for a Better Env't*, 523 U.S. at 101, 118 S.Ct. 1003; *Lujan*, 504 U.S. at 559–60, 112 S.Ct. 2130). The standing doctrine aids the federal judiciary to avoid intruding impermissibly upon the powers vested in the executive and legislative branches, by preventing courts from issuing advisory opinions not founded upon the facts of a controversy between truly adverse parties. *Id.* (citing *United Public Workers v. ·Mitchell*, 330 U.S. 75, 89–90, 67 S.Ct. 556, 91 L.Ed. 754 (1947)). A prudential ripeness analysis, requires courts to consider: 1) whether the issues are fit for judicial resolution and 2) the potential hardship to the parties if judicial resolution is postponed. *National Audubon Society, Inc. v. Davis*, 307 F.3d 835, 850 (9th Cir.2002) (citing *Abbott Labs.*, 387 U.S. at 149, 87 S.Ct. 1507). The Ninth Circuit has noted that actions are ripe for adjudication where "the specific facts surrounding possible actions . . . will not aid resolution" of

the challenges raised and the "injury is established, and the legal arguments are as clear as they are likely to become." *Id.*

### 4. *Declaratory Judgment Act:*

#### 1. *Jurisdiction:*

■ The Declaratory Judgment Act is a remedial statute creating a remedy where by a federal court "in a case of actual controversy within its jurisdiction...may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Levin Metals Corp. v. Parr–Richmond Terminal Co.,* 799 F.2d 1312, 1315 (9th Cir.1986) (citing 28 U.S.C. § 2201). The Ninth Circuit has recognize that the Declaratory Judgment Act "was enacted to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication without having to wait until he is sued by his adversary." *Id.* (citations omitted). Put differently, the remedy available under the Declaratory Judgment Act "is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the damage has accrued.... It permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty and it helps avoid multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligations of litigants." *United Food & Commercial Workers Local Union Numbers 137, 324, 770, 899, 905, 1167, 1222, 1428, and 1442 v.*

*Food Employers Council, Inc.,* 827 F.2d 519, 524 (9th Cir.1987) (citing 10B Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 2751, at 569–71 (2d ed.1983)). The purpose of the Declaratory Judgment Act is to give litigants an early opportunity to resolve federal issues to avoid "the threat of impending litigation." *Biodiversity Legal Foundation v. Badgley,* 309 F.3d 1166, 1172 (9th Cir.2002) (citing *Seattle Audubon Soc'y v. Moseley,* 80 F.3d 1401, 1405 (9th Cir.1996) (per curiam)).

■ The Declaratory Judgment Act, however, does not provide an independent basis for of federal subject matter jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).[4] Rather, it vests a district court with discretion to hear an action which is already within its jurisdiction. 28 U.S.C. § 2201(a). Thus, in light of the Article III requirements stated above, whenever a party seeks declaratory and injunctive relief, the Ninth Circuit has held that there must exist a "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Culinary Workers Union, Local 226 v. Del Papa,* 200 F.3d 614 (9th Cir.1999) (determining a substantial controversy exists where plaintiff was threatened with criminal prosecution) (citing *Ross v. Alaska,* 189 F.3d 1107, 1114 (9th Cir.1999)). These justiciability limitations are reflected in the doctrines of standing, mootness, and ripeness. *Id.* (citing *Lee v. State of Oregon,* 107 F.3d 1382, 1387 (9th Cir.1997)). Thus, the determination of whether the Declaratory Judgment Act applies rests on whether there is an actual

---

**4.** While the APA governs judicial review of administrative decisions involving the Endangered Species Act, it also fails to provide an independent basis for jurisdiction. *Cornejo–Barreto v. Seifert,* 218 F.3d 1004, 1015 (9th Cir.2000) (The Administrative Procedure Act is not an independent grant of jurisdiction, and APA claims that do not arise under specially-constructed statutory review provisions must be brought pursuant to other federal statutes granting subject-matter jurisdiction.); *see also* 5 U.S.C.A. § 551 *et seq.*

case or controversy before the Court which satisfy the jurisdictional requirements.

Under the Declaratory Judgment Act a plaintiff must establish standing by showing "that there is a substantial controversy, between parties having adverse interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Scott*, 306 F.3d at 657 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981) quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)); *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (stating that declaratory injunctive relief may be appropriate "[w]here there is ... a concrete case admitting of an immediate and definite determination of the legal rights of the parties in an adversary proceeding upon the facts alleged").

The Ninth Circuit has determined that "[w]hen a declaratory judgment plaintiff asserts a claim that is in the nature of a defense to a threatened or pending action, the character of the threatened or pending action determines whether federal question jurisdiction exists with regard to the declaratory judgment action." *Levin Metals*, 799 F.2d at 1315 (citing *Public Service Com'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 248, 73 S.Ct. 236, 97 L.Ed. 291 (1952)). Thus, "[i]f ...the declaratory judgment defendant could have brought a coercive action in federal court to enforce its rights," jurisdiction exists for declaratory relief. *Id.* (citations omitted). The claim, however, must be ripe for adjudication. *See id.* (citing *D'Imperio v. United States*, 575 F.Supp. 248 (D.N.J.1983)). Therefore, jurisdiction exists where "[a]n action seeking a declaration of nonliability is ripe when '[o]ne's fears [are] sufficiently real and immediate, based on the actions or representations of one's potential adver-

sary or based on actions one desires to take which may run afoul of a law or agreement, valid or otherwise.'" *Id.*

In this case, Trout Unlimited and Pacific Crest assert that this case merely seeks an advisory opinion which neither Article III of the Constitution nor the Declaratory Judgement Act allow. Further, they argue there is no case or controversy against either the FWS and NMFS because both agencies approved the NFHCP. Plum Creek maintains that the notices of intent to file suit constitute a serious threat of future injury to Plum Creek's interest in expending money implementing the NFHCP sufficient to create a case and controversy which this Court may properly review under the Declaratory Judgment Act.

 Applying the above standards for jurisdiction, this Court concludes that it is without jurisdiction to consider Plum Creek's request for declaratory relief. Plum Creek filed this action seeking a declaration that the NFHCP was adopted in accordance with "all applicable federal law" in response to the notices of intent to sue and media releases issued by Trout Unlimited and Pacific Crest. While the notices of intent to sue clearly threaten legal action regarding the NFHCP, the notices of intent to sue and the media releases issued by Trout Unlimited and Pacific Crest indicated a suit would be brought against FWS and NMFS—not Plum Creek. In a Fifth Circuit case cited by Plum Creek, *Shields v. Norton*, 289 F.3d 832 (5th Cir.2002), the court recognized that a notice of intent to sue could warrant declaratory relief. (Docket No. 17, p. 7). In *Shields*, however, the Fifth Circuit determined the notices of intent to sue were not a "sufficient threat of litigation" in that case because they were not sent to nor directed at the declaratory claimant individually. *Compare National*

*Audubon Society, Inc. v. Davis,* 307 F.3d 835 (9th Cir.2002) (distinguishing *Shields* as to the fairly traceable requirement of Article III and determining the declaratory claimants possessed standing because they suffered an economic injury). So too in this case, as in *Shields,* the notices of intent to sue and media notices indicate Trout Unlimited and Pacific Rivers intent to sue FWS and NMFS. Thus, Plum Creek has not been threatened with an impending litigation and failed to show the existence of a substantial controversy, between parties having adverse interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment. *See Scott,* 306 F.3d at 657. While the Court does not dispute that Plum Creek has a significant interest in any litigation between Trout Unlimited and Plum Creek and FWS and NMFS, there does not exist evidence of a threat of impeding litigation towards Plum Creek. Further, Plum Creek has no controversy with either FWS nor NMFS.

Moreover, Plum Creek's claims do not meet the factors for determining prudential ripeness. Additional specific facts surrounding the potential action to challenging the NFHCP would aid in resolution of the possible challenges raised by Trout Unlimited and Pacific Crest. *See National Audubon Society,* 307 F.3d at 850. The case as presented to this Court is premature and the legal arguments are not as clear as they are likely to become when this matter is ripe for adjudication. *Id.*

### 2. *Exercise Discretion:*

■■■■ In this case, even if the Plaintiff had established a basis for jurisdiction, the Court would decline to exercise its discretion to adjudicate the declaratory relief requested under 28 U.S.C. § 2201. *Government Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1222 (9th Cir.1998) (en banc) ("If the suit passes constitutional and statutory muster, the district court

must also be satisfied that entertaining the action is appropriate. This determination is discretionary, for the Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority.'"). The declaratory remedy is committed to the sound discretion of the district court. *See Doe v. Gallinot,* 657 F.2d 1017, 1024–25 (9th Cir.1981) (citing *Mechling Barge Lines v. United States,* 368 U.S. 324, 331, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961); *Public Service Commission v. Wycoff Co.,* 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952); *Brillhart v. Excess Insurance Co.,* 316 U.S. 491, 494–98, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)). The Supreme Court has noted, and the Ninth Circuit recognized, that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdiction prerequisites." *Dizol,* 133 F.3d at 1223 (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 289, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)).

■■■■ In determining whether to exercise its jurisdiction, the Ninth Circuit has instructed that the factors enumerated in *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) remain the "philosophic touchstone" for the district court. *Dizol,* 133 F.3d at 1225. Those factors suggest: 1) the district court should avoid needless determination of state law issues; 2) it should discourage litigants from filing declaratory actions as a means of forum shopping; 3) and it should avoid duplicative litigation. *Id.* (citation omitted). In addition, the Ninth Circuit has suggested other considerations, such as "whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory

action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies." *Id.* at 1225 n. 5 (quoting *American States Ins. Co. v. Kearns,* 15 F.3d 142, 145 (9th Cir.1994) (J. Garth, concurring)); *see also Maryland Cas. Co. v. Knight,* 96 F.3d 1284, 1288 (9th Cir.1996) (finding district court should decline jurisdiction where the federal action was filed in anticipation of an impending state court suit and the federal suit is merely "reactive" to the state court proceeding).

This Court recognizes that the discretion to hear a declaratory judgment action "is not unfettered, and court cannot decline to entertain such action as matter of whim or personal disinclination." *Dizol,* 133 F.3d at 1222; 28 U.S.C.A. § 2201(a). However, both the Supreme Court and Ninth Circuit have recognized that "it [is] more consistent with the statute to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Id.* (quoting *Wilton,* 515 U.S. at 289, 115 S.Ct. 2137). Thus, in this Court's judgment this case is premature and not yet appropriate for declaratory relief in the form requested in the complaint.

The Court has reviewed several declaratory judgment cases. The Ninth Circuit has, in many cases, determined that declaratory judgment is proper so long as there is no state case currently pending nor state interests or laws which must be applied. *See Maryland,* 96 F.3d at 1288 ("The primary instance in which a district court should exercise its discretion to dis-

miss a case is presented when there exists a parallel proceeding in state court."); *Employers Reinsurance Corp. v. Karussos,* 65 F.3d 796, 798 (9th Cir.1995) (holding district courts should decline jurisdiction where the action presents only issues of state law during the pendency of parallel state court proceedings); *American National Fire Insurance Company v. Hungerford,* 53 F.3d 1012, 1019 (9th Cir. 1995). This principle serves to conserve judicial resources, avoid duplicative litigation, and avoid the needless resolution of state law in federal court. *Maryland,* 96 F.3d at 1288 (citation omitted). The Ninth Circuit, however, has recognized that "[c]ases, such as this one, 'in which there re no parallel state court proceedings,' lie at the 'outer boundaries' of the district court's discretion under the Declaratory Judgment Act." *Id.* (quoting *Wilton,* 515 U.S. at 290, 115 S.Ct. 2137 (declining to determine whether a district court should exercise its discretion under such circumstances)). In *Maryland,* the Ninth Circuit determined the district court could properly invoke its jurisdiction to consider the action where there was no pending or impending state court suit, no need to determine state law issues, there existed an independent basis for jurisdiction, and declining jurisdiction would result in piecemeal litigation requiring the parties to refile their counterclaims in state court. *Id.*

This case is distinct from *Maryland* in that while our case does not involve a pending or impending state action and/or state law, there is also no independent basis for jurisdiction. As stated above, Plum Creek's claims are simply not ripe for this Court's review. Further, by declining to exercise our discretion here, the Court is conserving judicial resources until the parties are able to present an actual case and controversy for this Court to decide.

In other cases, the Ninth Circuit has determined that where the Plaintiff seeks a declaration of nonliability as to a contract in response to a threatened action the Ninth Circuit also determined those actions are proper for declaratory judgment. *See Levin,* 799 F.2d at 1315. In those cases, however, the party bringing the action asserted a challenge to the contract more specific than "any applicable federal law" as is presented in this case. Those plaintiffs sought to validate a specific defense or clause of a contract, not simply declare the entire contract legal under any circumstance. *See Dizol,* 133 F.3d at 1222 (determination of whether an estate could recover on an insurance policy); *Levin,* 799 F.2d at 1315 (holding the declaratory judgment plaintiff must base its claim of nonliability on one or more of the statutory affirmative defenses enumerated in CERCLA.).

Plum Creek's complaint expressly asks this Court to declare that the FWS and NMFS "lawfully approved the [NFHCP] under *all applicable federal law.*" (Docket No. 1, p. 12) (emphasis added). This is an impossible task for the Court and an inefficient use of judicial resources. Even though Trout Unlimited and Pacific Crest may raise many possible violations of federal law, the burden would be on the Court to assure itself that the NFHCP was not in violation of any federal law under any conceivable circumstance. Such speculation cuts against the purpose of the Declaratory Judgment Act. The Declaratory Judgment Act affords this Court jurisdiction over an "actual controversy," in other words, one where there exists "a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life,* 300 U.S. at 241, 57 S.Ct. 461. There is little certainty here as to what claims or issues could be contestable in the vast realm of "all applicable federal law." To properly address this claim for relief the Court would need to engage in an expansive review of the entirety of all federal law simply to answer the first question; what is the applicable federal law.

The Court sincerely doubts that in drafting the complaint that the claimants intended to open the door to such a wide-sweeping expanse of issues. In reviewing Plum Creek's filings on whole, it seems what Plum Creek seeks is assurance that its agreement spanning thirty years will be worth the investment. Plum Creek maintains the need is unique in this case because of the length of time and amount of money that may be expended in implementing the NFHCP. Although the Court can appreciate Plum Creek's desire to guarantee its investment, the Court cannot ignore the fact that there are many individuals who enter into binding agreements or contracts which also last for several years and entail large sums of money. Even in those cases, the Court would be unable to simply declare a contract legal under all applicable law. True that in many of those cases the parties to the contracts do not include federal agencies, however, the simple fact that Plum Creek has entered into an agreement with a federal agency does not give Plum Creek any more standing to bring a declaratory judgment action than any other claimant.

Further, while Trout Unlimited and Pacific Crest may be able to raise their concerns in counter-claims and cross-claims, the Court would still be faced with rendering a wide-sweeping declaration as to the legality of the NFHCP under all federal law. Questions regarding the legality of contracts—such as NFHCP—are more appropriately brought in a more narrow focus. The Court may be able to ascertain some of the potential violations by the notices of intent to sue, however, the no-

tice itself states that the grounds specified were not the sum total of the challenges which might be raised.

In addition, allowing Plum Creek to proceed with this action seems to run contrary to Congress' intent in enacting the ESA citizen suit provisions and APA which require the filing of a 60 day notice of intent to sue. *See* 5 U.S.C. §§ 701–706,16 U.S.C. § 1540. Trout Unlimited and Pacific Crest are correct that this case presents a "race to the courthouse" situation since they are precluded from filing suit until they have complied with the 60 day notice requirement, while Plum Creek need not wait. Congress could not have intended for the notice requirement to suppress one parties ability to file suit while allowing the opposing party to initiate a suite with no limitations.

Finally, a review of the notices of intent to sue also reveals Trout Unlimited and Pacific Crest attempted to proceed without litigation. The fact that Plum Creek has initiated this litigation in the face of such efforts runs contrary to the interests of justice. There is a growing trend in our country's legal system to facilitate resolution of disputes outside the confines of the courthouse. While this Court expresses no opinion about the potential for these parties to successfully resolve their differences in this manner, the Court recognizes the benefits of pursuing such resolutions and the policy of conservation of judicial resources.

## ORDER

Based on the foregoing and being fully advised in the premises, the Court **HEREBY ORDERS** that Defendants' Motion to Dismiss (Docket No. 7) is **GRANTED**. The Complaint is dismissed in its entirety as to all parties.

## JUDGMENT

Based upon this Court's Order, dated March 31st, 2003, and the Court being fully advised in the premises,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Plaintiff take nothing from the Defendants and this case is **DISMISSED IN ITS ENTIRETY**.