

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-12-2004

# Wyatt VI Inc v. Govt of VI

Precedential or Non-Precedential: Precedential

Docket No. 02-2695

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Wyatt VI Inc v. Govt of VI" (2004). *2004 Decisions*. Paper 174.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/174

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT
_____

Nos: 02-2695/3762
_____

WYATT, VIRGIN ISLANDS, INC.

HOVENSA, LLC,

Intervenor-Plaintiff in District Court

v.

GOVERNMENT OF THE VIRGIN
ISLANDS BY AND THROUGH THE
VIRGIN ISLANDS DEPARTMENT OF
LABOR; CECIL BENJAMIN,
IN HIS OFFICIAL CAPACITY AS
COMMISSIONER OF THE VIRGIN
ISLANDS DEPARTMENT OF LABOR

VIRGINIE GEORGE; MALCOLM
MACCOW; EDGAR BARRIOS;
CLAUDE GAINE

Intervenors-Defendants in District Court

Government of the Virgin Islands,

Appellant in 02-2695

Virginie George, Malcolm Maccows,
Edgar Barrios and Claude Gaines,

Appellants in 02-3762
_____

Appeal from the District Court of the
Virgin Islands
(D.C. Civil Action No. 02-cv-00029)
District Judge: Honorable Raymond L.
Finch
_____

Argued on April 30, 2003

Before: ROTH, MCKEE and COWEN
Circuit Judges

(Opinion filed: October 12, 2004)

Iver A. Stridiron
Attorney General

Elliott M. Davis
Solicitor General

Douglas J. Juergens (Argued)
Maureen Phelan
Richard S. Davis
Assistant Attorney General
Department of Justice
48B-50C Kronprindsens Gade
GERS Building, 2nd Floor
St. Thomas, VI 00802

K. Glenda Cameron (Argued)
Lee J. Rohn
Law Office Lee J. Rohn
1101 King Street, Suite 2
Christiansted
St. Croix, USVI, 00820

Counsel for Appellants

Charles E. Engeman (Argued)
Ogletree, Deakins, Nash, Smoak &
Stewart
1336 Beltjen Road
Suite 202
Charlotte Amalie, St. Thomas, VI 00802

W. Carl Jordan
Tara Porterfield (Argued)
Vinson & Elkins L.L.P.
2300 First City Tower
1001 Fannin Street
Houston, TX 77002-6760

George H. T. Dudley
Micol L. Morgan
Dudley, Topper and Feuerzeig, LLP
Law House, 1A Frederiksberg Gade
Charlotte Amalie, St. Thomas
U.S. Virgin Islands 00802


Counsel for Appellees

O P I N I O N

ROTH, Circuit Judge

Plaintiffs, Wyatt V.I., Inc., and HOVENSA, L.L.C., brought an action for declaratory and injunctive relief in the District Court of the Virgin Islands. The dispute arose from the requirement Wyatt imposed on prospective employees that they sign a Dispute Resolution Agreement (DRA) as a condition of employment. Plaintiffs sought (1) a declaration that the DRA is enforceable and (2) an injunction to prohibit the Commissioner of the Department of Labor from interfering with their use of the DRA. The District Court granted declaratory relief in plaintiffs' favor. Although the defendants raise many grounds on appeal, the only issue we need address is whether the plaintiffs' action for declaratory and injunctive relief is ripe for judicial review. For the reasons we state below, we conclude that, under Public Service Commission v. Wycoff Co., Inc., 344 U.S. 237 (1952), there is no "case of actual controversy" here as is required by 28 U.S.C. § 2201(a). Thus, plaintiffs' cause of action is not ripe for review.

## I. BACKGROUND

In 2001, HOVENSA awarded Wyatt a contract to provide maintenance and other services at HOVENSA's oil refinery in St. Croix, Virgin Islands. In November 2001, Wyatt began accepting employment applications in the Virgin Islands. As a condition of employment, Wyatt required all applicants to sign the DRA. Under the DRA, each applicant agreed to submit to binding arbitration all claims arising from the applicant's candidacy for employment or the terms and conditions of any offer of employment.[1]  Wyatt's parent

---

[1] The Dispute Resolution Agreement provides in relevant part:

NOTICE TO ALL APPLICANTS

If you wish to be considered
for employment with Wyatt V.I.,

2

Inc. ("Wyatt"), you must read and sign the following Dispute Resolution Agreement. Your application will not be considered until you have signed the Agreement. If you desire to do so, you may take this document with you to review. You must, however, return a signed copy of the Agreement with your application if you wish to continue the application process.

Dispute Resolution Agreement

I recognize that differences may arise between Wyatt and me in relation to my application for employment. Both Wyatt and I agree to resolve any and all claims, disputes or controversies arising out of or relating to my application or candidacy for employment or the terms and conditions of any offer of employment exclusively by final and binding arbitration before a neutral arbitrator pursuant to the American Arbitration Association's *National Rules for the Resolution of Employment Disputes*, a copy of which is available at www.adr.org or from Wyatt. By way of example only, some of the types of claims subject to final and binding arbitration include claims for an alleged wrongful decision not to hire me; claims for discrimination

corporation, Wyatt Field Services Co., does not require applicants for employment on the mainland United States to sign a DRA.

Prospective employees complained to the Virgin Islands Department of Labor about the DRA. As a result of these complaints, the Commissioner of the Department of Labor sent two letters to Wyatt requesting that Wyatt "cease and desist" its use of the DRA. In the first letter, dated December 20, 2001, the Commissioner wrote to Todd Reidlinger, a manager at Wyatt in the Virgin Islands, "[t]he agreement is improper and illegal; it does not serve as a portrayal of reasonable and fair labor/management relations." The Commissioner also asserted the Department of Labor's belief that the DRA violated the Virgin Islands Wrongful Discharge Act (WDA), 24 V.I.C. § 76. Then in a February 1, 2002, letter, sent to Carmelo Rivera, a human resources

or harassment on the basis of age, race, religion, disability, national origin or other basis prohibited by state, federal, or territorial law; or claims for breach of any employment agreement or promises; and any claims for personal injury or property damage. This agreement extends to disputes with or claims against Wyatt V.I., Inc., HOVENSA, L.L.C., and any of their related or affiliated companies, entities, employees or individuals (as intended third party beneficiaries to this agreement).

3

consultant for Wyatt, the Commissioner stated:

> We will do whatever is necessary to ensure that the Virgin Islands' workforce receive every 'employment protection' guaranteed to them under our labor laws. You are hereby advised that a willful violation of 24 V.I.C. § 76 will be reported to Office of the Attorney General for prosecution. Please cease and desist from this practice. Your cooperation is expected.

Wyatt nevertheless continued to use the DRA as a condition of employment.[2] The Department of Labor then requested an opinion from the Office of the Attorney General of the Virgin Islands regarding Wyatt's use of the DRA. On March 1, 2002, the Attorney General issued an opinion letter, stating:

> We find that this case is ripe for injunctive and/or declaratory relief, and we shall proceed to seek such relief on behalf of the Department of Labor and the prospective employees of Wyatt. We expect to gather affidavits to support such an action from prospective employees who were told they had to sign these agreements if they wanted to be considered for employment with Wyatt, and felt coerced into signing the agreements.

> \* \* \*

> The pre-employment dispute resolution agreement required by Wyatt, Inc. for prospective employees is in violation of 24 V.I.C. 76, and is unconscionable, coercive, an adhesion contract, and is contrary to an important public policy in the Virgin Islands which recognizes the employment reality of an island economy.

After the Attorney General issued the opinion, the Commissioner notified Wyatt of his intent to bring charges if Wyatt continued to use the DRA.

The Government, however, never filed suit against Wyatt. Instead, on March 20, 2002, Wyatt instituted an action for declaratory and injunctive relief against the Government. In Count I, Wyatt sought

---

[2] In an apparent effort to reconcile the dispute over the use of the DRA, the Commissioner and Wyatt's attorney conferred by telephone before the Commissioner sent the first letter. Wyatt agreed to remove objectionable language from the DRA concerning employment at will but continued to use essentially the same DRA. The two also met after the Commissioner sent the first letter but did not resolve the dispute.

a declaration under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), and the Virgin Islands Declaratory Judgment Act, 5 V.I.C. §1261, that 1) by agreeing to arbitrate, an applicant or employee does not forego substantive rights, but instead agrees to resolution of all disputes in an arbitral forum; 2) the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 - 16, governs the enforceability of arbitration agreements covering employment disputes; 3) the DRA is protected by and enforceable under the FAA; 4) the DRA does not violate the WDA; 5) the DRA is not unconscionable; 6) the DRA is not contrary to the public policy of the Virgin Islands; 7) even if the DRA violates the WDA, the WDA is preempted by the FAA; and 8) the Commissioner's "cease and desist" letters are unenforceable to the extent they purport to require Wyatt to abandon its use of the DRA. In Count II, Wyatt claimed a violation of the federal civil rights statute, 42 U.S.C. § 1983, and alleged that the Commissioner was attempting to deprive Wyatt of its liberty interest in entering into lawful contracts. In Count III, Wyatt sought injunctive relief against the Commissioner. Wyatt named, as defendants, the Government of the Virgin Islands by and through the Virgin Islands Department of Labor and Cecil Benjamin, in his Official Capacity as Commissioner of the Virgin Islands Department of Labor.

HOVENSA moved to intervene as a third party beneficiary to Wyatt's DRA because the DRA granted HOVENSA the same right to demand arbitration as it granted Wyatt. The motion was granted. HOVENSA's complaint in intervention alleged the same counts as Wyatt's, excluding the request for injunctive relief.

After the suit had commenced Virginie George, Malcolm Maccow, Edgar Berrios, and Claud Gaines, prospective employees whom Wyatt would not consider for employment because of their refusal to sign the DRA, moved to intervene as defendants. That motion was also granted.[3]

The District Court became concerned about its jurisdiction to hear the case and ordered the parties to address that issue. In its Memorandum Opinion dated June 5, 2002, the District Court concluded that it did not have subject matter jurisdiction based on the alleged violation of 42 U.S.C. §1983. The District Court held, however, that it did have federal question jurisdiction pursuant to 18 U.S.C. § 1331, based on Wyatt's claim that the FAA provides a substantive right to enter into an arbitration agreement and that any local law in conflict with the FAA is preempted by virtue of the Supremacy Clause of the United States Constitution. Wyatt, V.I., Inc. v. Government of the

---

[3] The prospective employees also moved to reopen the evidence to allow presentation of evidence of "coercion, duress, lack of ability to apply for jobs elsewhere, the illegality of the provision and the public policy of the Virgin Islands." The District Court denied the prospective employees' motion to reopen the evidence.

Virgin Islands, 2002 WL 31599790, * 2 (D.V.I. June 5, 2002).

The District Court ruled that declaratory relief was an appropriate remedy in the case because Wyatt was facing "a threat of liability if it continues to use the Dispute Resolution Agreement without a determination of its legality." In granting declaratory relief in Wyatt's favor, the court first noted that there was no preemption issue because there is no Virgin Islands law or policy directly in conflict with enforcement of the DRA under the FAA. The District Court next concluded that the DRA is enforceable under the FAA because it is not unconscionable, coercive, or contrary to public policy. Finally, the District Court denied Wyatt's request for injunctive relief. The court reasoned that any further Government action would be unlikely as a result of the declaratory judgment entered in Wyatt's favor.

The Government and the prospective employees filed their appeals on June 7, 2002, and September 27, 2002, respectively.[4] Wyatt does not appeal the District Court's denial of injunctive relief.

During the pendency of this appeal, we have held in Lloyd v. HOVENSA, L.L.C., 369 F.3d 263 (3d Cir. 2004), that Wyatt's DRA was not unenforceable as

---

[4] The prospective employees filed a motion to reconsider in the District Court on June 19, 2002, but they withdrew that motion on September 27, 2002 and filed a notice of appeal the same day.

violative of public policy, 369 F.3d at 274, and we affirmed an order compelling arbitration pursuant to the DRA. 369 F.3d at 275.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court purported to exercise jurisdiction pursuant to the general federal question statute, 28 U.S.C. § 1331.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which gives the courts of appeals jurisdiction over appeals from all final decisions of the district courts. We exercise plenary review over whether a cause of action is ripe. See Doe v. County of Centre, PA, 242 F.3d 437, 452 (3d Cir. 2001).

## III. DISCUSSION

As one ground of appeal, the prospective employee defendants have challenged the District Court's decision to exercise judicial review of the case on the ground that the case is not yet ripe.[5] First, they submit that the Commissioner's cease and desist letters were not orders within the meaning of 24 V.I.C. § 68(c). They further urge that, even if the cease and desist letters are considered orders, the Commissioner never petitioned the Territorial Court for enforcement of the orders. They argue that, because the Territorial Court never entered a decree

---

[5] The prospective employees relied on a ripeness argument in their brief and at oral argument, but the Government did not rely on this ground for appeal.

enforcing the orders, there was no final administrative or state action; therefore, the case was not ripe for judicial intervention.

Wyatt and HOVENSA contend that the case is ripe for judicial review because the Commissioner's "cease and desist" orders constitute concrete action in the sense that the orders affect Wyatt's primary conduct, namely what contracts Wyatt can utilize in its hiring process. Additionally, Wyatt asserts that it had no choice but to bring its action for declaratory and injunctive relief because it thought it would be subject to fines or imprisonment under 24 V.I.C. § 75 if it continued to ignore the orders of the Commissioner.

We agree with the prospective employee defendants that this case is not ripe under the "case of actual controversy" requirement of the Declaratory Judgment Act of 1934, 28 U.S.C.A. § 2201. Because we decide the appeal on this basis, we will not go on to discuss the other grounds for appeal.

The Declaratory Judgment Act creates a remedy by which federal courts "may declare the rights and other legal relations of any interested party seeking such declaration" when there is a "case of actual controversy." 28 U.S.C. § 2201(a). The Supreme Court, in upholding the constitutionality of the Act, has interpreted the remedy as limited to cases and controversies in the constitutional sense. See Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937). A "case of actual controversy" means one of a justiciable nature.

Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 325 (1936). The Act is constitutional "so far as it authorizes relief which is consonant with the exercise of the judicial function in the determination of controversies to which under the Constitution the judicial power extends." Aetna, 300 U.S. at 240.

In order for there to be a "case of actual controversy" in the constitutional sense, the controversy must be

> one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

Aetna, 300 U.S. at 240-41 (citations omitted). The conflict between the parties must be ripe for judicial intervention; it cannot be "nebulous or contingent" but "must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will

7

have on the adversaries, and some useful purpose to be achieved in deciding them." Wycoff, 344 U.S. at 244.

Interrelated to our discussion of what constitutes a "case of actual controversy" in the constitutional sense is the ripeness doctrine. The purpose of the ripeness doctrine is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99, 105 (1977). In determining whether a dispute has matured to a point to require judicial adjudication, courts must consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. at 149. A dispute is not ripe for judicial determination "'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Doe v. County of Centre, PA, 242 F.3d 437, 453 (3d Cir. 2001) (quoting Texas v. United States, 523 U.S. 296, 300 (1998)). "Claims based merely upon 'assumed potential invasions' of rights are not enough to warrant judicial intervention." Ashwander, 297 U.S. at 325 (quoting Arizona v. California, 283 U.S. 423, 462 (1931)).

In Wycoff, the Supreme Court faced the issue whether there was a "case of actual controversy" in an action seeking declaratory and injunctive relief, under the Federal Declaratory Judgment Act, to establish that certain film products were being transported in interstate commerce. The Utah Public Service Commission had denied the plaintiff's application for authorization to carry film commodities within the state. The plaintiff commenced an action in federal court, seeking both a declaratory judgment that its carriage of motion picture film and newsreels between points in Utah constituted interstate commerce and an injunction from interfering with this transportation. Wycoff, 344 U.S. at 239.

The Court decided that the case was not ripe for judicial review. First, the Court noted that the dispute had not matured to a point where the Court could see what controversy was going to develop. Id. at 245. It was not enough that the plaintiff feared future administrative or judicial action by the commission. Id.

Second, the Court noted that the declaratory proceeding, as it was invoked by the plaintiffs, not only "foreclos[ed] an administrative body," but was "incompatible with a proper federal-state relationship." Id. at 247. The Court stated:

> Declaratory proceedings in the federal courts against state officials must be decided with regard for the implications of our federal system. State administrative bodies have the initial right to reduce the general

policies of state regulatory statutes into concrete orders and the primary right to take evidence and make findings of fact. It is the state courts which have the first and the last word as to the meaning of state statutes and whether a particular order is within the legislative terms of reference so as to make it the action of the State.

Id.; Cf. Topp-Cola Co. v. Coca-Cola Co., 314 F.2d 124, 126 (2d Cir. 1963) (holding that, under Wycoff, District Court erred in exercising jurisdiction over the plaintiff's action for declaratory relief because, just as federal "interference" with state administrative agencies and interpretation of state law is "condemned," plaintiff's federal action seeking relief from territorial administration of Puerto Rican trademark law is similarly condemned).

The dispute presented in the case before us is Wyatt's claim that it was facing prosecution under 24 V.I.C. § 75 and the possibility of the imposition of fines. Section 75 provides:

> Whoever wilfully resists, prevents, impedes or interferes with the Commissioner or his duly authorized representative, in the performance of his duties pursuant to this chapter, shall be fined not more than $500 or imprisoned not more than 3 months, or both.

(emphasis added). We note first that Wyatt does not mention potential prosecution under § 75 in its complaint requesting declaratory relief. Nor is § 75 mentioned at the District Court hearing on April 4, 2002, or in the District Court's Memorandum Opinion of June 5, 2002, granting declaratory relief to Wyatt. In fact, at the April 5 hearing, the Assistant Attorney General, representing the Government, stated:

> With respect to enforcement of a cease and desist order, I believe that there is no single way in which cease and desist orders are to be enforced.
>
> The government has at its arsenal more than one technique, including the seeking of declaratory judgment, which was the intention in this matter and which, to some extent, appears to be the direction in which it's going.
>
> We believe

that by getting a court to adjudicate the dispute we would be resolving the issues raised by the cease and desist order, and that's it.

The government, however, has never taken any steps to obtain a declaratory judgment or to invoke any other remedy as set out in Chapter 3 of Title 24 of the Virgin Islands Code. Such remedies would include a petition for judicial enforcement of an order, pursuant to § 69, a petition for judicial review of an order, pursuant to § 70, or an order for reinstatement of a wrongfully discharged employee, pursuant to § 77(c). Because the penalties of § 75 are limited to resisting, preventing, impeding or interfering with the Commissioner in the performance of his duties, as set out in Chapter 3, it would appear that the Commissioner would have to seek further remedial action under Chapter 3, than he has done here, before he could invoke the penalties of § 75. Wyatt's fears appear then to be premature.

The only action that Commissioner did take was to write two letters in which he requested that Wyatt "cease and desist" its use of the DRA. Such a letter is not an "order," nor was there any evidentiary hearing held prior to the transmittal of either letter. The inconclusiveness of the Commissioner's decision on how he would follow up the initial letters and the opinion letter of the Attorney General is demonstrated by the statement, which we quote above, of the Assistant Attorney General at the April 5 District Court hearing.

As in Wycoff, the plaintiffs merely feared potential future administrative or judicial action and brought this action for declaratory relief "to hold in readiness for use should the Commission[er] at any future time attempt to" use his powers to issue an order and enforce that order through the Territorial Court. See Wycoff, 344 U.S. at 245. In essence, the dispute between the parties is contingent upon events that may not occur at all or may occur differently than anticipated. See Doe v. County of Centre, PA, 242 F.3d at 453. Because Wyatt did not give the Commissioner the chance to proceed on its own grounds, the Department of Labor never had the opportunity "to reduce the general policies of [its] state [statute] into [a] concrete order," and the Virgin Islands never had the opportunity to give the "last word" as to the meaning of the WDA and whether the Commissioner's order was "within the legislative terms of reference so as to make it the action of" the Virgin Islands. Wycoff, 344 U.S. at 247. Wyatt has not yet felt the effects of final administrative or state action in a concrete way. Abbott Laboratories, 387 U.S. at 148-49. For the above reasons, we conclude that this cause of action is not yet ripe for review.

The Government and the prospective employees also argue that the District Court did not have federal

question jurisdiction under 28 U.S.C. § 1331. They contend that Wyatt's request for a declaration that "even if the Agreement violates the WDA, the WDA is preempted by the FAA" is in reality an anticipated federal defense of preemption which, under the well-pleaded complaint rule, does not by itself give the District Court subject matter jurisdiction over Wyatt's cause of action. In response, Wyatt submits that the District Court did have jurisdiction, notwithstanding the well-pleaded complaint rule, under Shaw v. Delta Airlines, 463 U.S. 86 (1983). Wyatt argues that they presented a federal question over which the District Court had jurisdiction because they sought to enjoin the Commissioner from interfering with their federal right to enter into arbitration agreements on the ground that the WDA is preempted by the FAA. See id. at 96, n.14 ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute, which by virtue of the Supremacy Clause of the Constitution must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.").

Because we will dismiss this case on ripeness grounds, we do not need to decide the federal question jurisdiction issue at this time. See Wycoff, 344 U.S. at 248-49 ("Since this case should be dismissed in any event, it is not necessary to determine whether, on this record, the alleged controversy over an action that may be begun in state court would be maintainable under the head of federal-question jurisdiction.").

## IV. Conclusion

For the foregoing reasons, we will reverse the District Court's grant of declaratory relief and remand this case to the District Court with directions to dismiss it.

11