Walter J. Olson, Plaintiff-Appellant,

v.

Town of Cottage Grove,
Defendant-Respondent-Petitioner.

Supreme Court

*No. 2005AP2257. Oral argument November 6, 2007.
—Decided May 30, 2008.*

2008 WI 51

(Also reported in 749 N.W.2d 211.)

ABRAHAMSON, C.J., concurs.
BRADLEY, J., joins.

For the defendant-respondent-petitioners there were briefs by *Constance L. Anderson, Paul G. Kent,* and *Abigail C.S. Potts* and *Anderson & Kent, S.C.,* Madison, and oral argument was by *Paul G. Kent.*

For the plaintiff-appellant there was a brief by *John A. Kassner III, Matthew D. Moeser* and *Murphy Desmond S.C.,* and oral argument by *John A. Kassner III.*

An amicus curiae brief was filed by *Thomas D. Larson* on behalf of Wisconsin REALTORS® Association.

¶ 1. DAVID T. PROSSER, J. This is a review of an unpublished decision of the court of appeals,[1] reversing a summary judgment issued by the Dane County Circuit Court, Angela B. Bartell, Judge. The circuit court dismissed a declaratory judgment action filed by plaintiff Walter Olson (Olson).

¶ 2. Olson is a real estate developer who owns 69.72 acres of land in the Town of Cottage Grove (Town) in Dane County (County). Olson brought a declaratory judgment action challenging the legality of the Town's Land Division and Planning Code § 15.15 (the ordinance or § 15.15). Olson sought to have the

---

[1] *Olson v. Town of Cottage Grove,* No. 2005AP2257, unpublished slip. op. (Wis. Ct. App. Dec. 28, 2006).

ordinance declared unconstitutional on various grounds, and he sought other relief, including approval of a final subdivision plat and compensation for the alleged taking of his property.

¶ 3. The circuit court granted the Town's motion for summary judgment on the basis that Olson's suit for declaratory judgment was not ripe, and therefore not justiciable. Olson appealed, and the court of appeals reversed. *Olson v. Town of Cottage Grove*, No. 2005AP2257, unpublished slip. op., ¶ 25 (Wis. Ct. App. Dec. 28, 2006). We granted the Town's petition for review.

¶ 4. We are asked to address two questions: (1) What is the appropriate standard of review for a circuit court's decision granting summary judgment in a declaratory judgment suit on the basis that the suit is not ripe?; and (2) Is Olson's suit ripe for declaratory judgment, and therefore justiciable?

¶ 5. We determine that the appropriate standard of review in these circumstances is de novo review. Applying this standard of review to the record before us, we conclude that Olson's declaratory judgment suit is ripe for adjudication, and therefore justiciable. Accordingly, we affirm the court of appeals and remand for proceedings consistent with this opinion.

## I. BACKGROUND

¶ 6. Since 1996 Olson has been the owner of a 69.72 acre parcel of land in the Town, commonly known as the Klosterman Farm (property). On December 27, 2001, Olson filed a zoning petition (No. 8357) with the County to rezone his property from A-1 EX Exclusive Agricultural to R-1 Residential in order to subdivide his property into 15 residential lots.

¶ 7. On June 7, 2002, Olson submitted a preliminary plat of his proposed subdivision development—Highlands Addition to American Heritage—to the Town pursuant to Wis. Stat. § 236.11(1)(a) (2001–02).[2]

¶ 8. On July 15, 2002, the Town amended its Land Division and Planning Code to include § 15.15, entitled "Transfer of Development Rights Program (TDR)." The ordinance's TDR program incorporates the Land Use Element of the Town's Smart Growth Comprehensive Plan—2020. The TDR program was created to serve several purposes, including allowing owners of farmland to capture a reasonable development value for their land, preserving the farmland and rural characteristics of the area, and directing new residential development toward areas of existing development. Another purpose of the program is to "maintain community separation between the Village of Cottage Grove and the City of Madison."

¶ 9. Under the TDR program, some land use districts are designated as "sending areas" and others as "receiving areas." Sending areas include land designated as agricultural or open space/park districts. Receiving areas include residential districts, which are designated as a "Conservation Residential District," a "Medium Density Residential District," or a "High Density Residential District" to reflect their intended density and use. Using these classifications, the TDR program creates an additional step for receiving area landowners who seek to develop their property.

¶ 10. Persons hoping to develop property in a receiving area must acquire a requisite number of transfer development rights (TDRs), which amount to ownership interests in sending area property. Under the TDR

---

[2] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

program, owners of land in sending areas may sell their TDRs to owners of land in receiving areas. A TDR easement is then established by a deed entered into among the developer, the Town, and the County. Through these easements, land interests from sending areas are "sent" to receiving areas to make up for the subsequent increase in density due to residential development in receiving areas. Hence, the ordinance sets forth procedures to assure that rezoning and division of land in a receiving area is not approved without first obtaining the requisite number of TDRs and recording a TDR easement.

¶ 11. Under the TDR program enacted by the Town in July 2002, Olson's property falls within a Medium Density Residential District receiving area and is zoned A-1 EX Exclusive Agricultural, which precludes residential development.

¶ 12. On October 28, 2002, Olson filed a second, separate zoning petition (No. 8598) with the County and requested to increase the number of proposed lots from 15 to 58 while still seeking to rezone the property from A-1 EX Exclusive Agricultural to R-1 Residential.

¶ 13. On January 14, 2003, the Dane County Zoning and Natural Resources Committee (ZNR) reviewed Olson's second zoning petition and recommended approval. On January 23, 2003, the Dane County Board of Supervisors (County Board) adopted the ZNR's recommendation, granting Olson conditional rezoning effective February 14, 2003. The petition was granted subject to two conditions. Olson was required to: (1) withdraw zoning petition No. 8357; and (2) record a final plat in the office of the Dane County Register of Deeds within one year of rezoning approval by the County.

¶ 14. On September 19, 2003, Olson submitted a final plat application for the Highlands Addition to

American Heritage. The Town conditionally approved this final plat at a Town Board meeting on November 3, 2003. The Town's approval of the plat was subject to the requirement that Olson acquire 10 TDRs and transfer them to the Town and County to comply with § 15.15.

¶ 15. Olson did not then own, and claimed that he was unable to acquire, the 10 TDRs necessary to satisfy the ordinance. Olson claimed that to acquire 10 TDRs would require the purchase of 350 acres of farmland in a sending area at a cost of approximately $750,000. Olson also claimed that to finish his redevelopment project would require the total acquisition of 700 acres of farmland.

¶ 16. On January 20, 2004, the Dane County Planning and Development Commission reminded Olson that zoning petition No. 8598 had a delayed effective date of February 14, 2004, provided that a plat was recorded in the office of the Dane County Register of Deeds no later than that date. Olson did not record a final plat before February 14, 2004.

¶ 17. On February 5, 2004, the County Board addressed zoning petition No. 8598 at a regular meeting. The record in the present case includes minutes of the Proceedings of the Dane County Board of Supervisors, Vol. 90, April 2003–2004, which read in part:

*MOTIONS FROM PREVIOUS MEETINGS*

The question before the Board was Supervisor Wiganowsky's motion at the last County Board meeting to rescind action on Zoning Petition 8832—Town of Sun Prairie. Motion carried. Moved by Supervisor Wiganowsky, seconded by Supervisor Wendt, to refer Petition 8832 to the Zoning & Natural Resources Committee. Motion carried.

The question before the Board was Supervisor Hulsey's motion at the last County Board meeting to

373

*rescind action on Zoning Petition 8598*—Town of Cottage Grove. Motion carried. Moved by Supervisor Hulsey, seconded by Supervisor O'Loughlin, to extend for one year the delayed effective date. Motion carried. (Emphasis added.)[3]

¶ 18. On September 13, 2004, Olson filed the instant declaratory judgment action against the Town to challenge the validity of § 15.15. Olson's complaint alleged that § 15.15 was enacted without statutory authority, violated several provisions of the Wisconsin Statutes, was applied to his property ex post facto, and constituted an uncompensated taking under the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 13 of the Wisconsin Constitution.[4] Olson's complaint sought the following relief: (1) a declaration that § 15.15 is void and of no effect; (2) an order directing the Town to immediately approve Olson's plat of the Highlands Addition to American Heritage; and (3) supplemental relief in the form of just compensation for the temporary taking of Olson's land.

¶ 19. On April 11, 2005, the Town filed a motion for summary judgment, asking that Olson's case be dismissed with prejudice for lack of justiciability. The Town's motion argued that Olson could not pursue declaratory relief with regard to the ordinance because his case was not ripe for adjudication, and therefore not justiciable.

¶ 20. On July 21, 2005, the circuit court granted the Town's motion for summary judgment. In a 16–page

---

[3] The parties dispute the meaning of "rescind action on Zoning Petition 8598," and the circuit court premised its determination that Olson's case was not ripe on its interpretation of this language. We address this dispute below.

[4] The merits of these allegations are not before this court, and we offer no analysis regarding their validity.

decision, the court determined that Olson's declaratory judgment action was not ripe for adjudication, and therefore not justiciable. The court held that "[b]ecause there are no material facts in dispute and the Town has provided a defense that defeats Olson's claim as a matter of law, summary judgment is granted to the Town."

¶ 21. The circuit court granted summary judgment because it determined that the controversy between Olson and the Town was not justiciable. Therefore, the court had no jurisdiction over Olson's claim for declaratory relief. The court cited *Loy v. Bunderson,* 107 Wis. 2d 400, 410, 320 N.W.2d 175 (1982) (citing Edwin Borchard, *Declaratory Judgments* 26–57 (2d ed. 1941) (hereinafter *Declaratory Judgments*)), for the four factors necessary to determine that a controversy is justiciable:

> (1) A controversy in which a claim of right is asserted against one who has an interest in contesting it. (2) The controversy must be between persons whose interests are adverse. (3) The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible interest. (4) The issue involved in the controversy must be ripe for judicial determination.

Only the fourth factor, ripeness, was disputed by the parties; therefore, the court found no need to address the first three factors.

¶ 22. The circuit court held that the Town had demonstrated, and Olson failed to rebut, a prima facie showing that Olson's action for declaratory judgment was not ripe based on the fact that "the County's conditional rezoning approval had been rescinded at the time Olson filed" his declaratory judgment suit on September 30, 2004. The ordinance itself was "of no

consequence" because Olson had not submitted a new petition for rezoning with the County after the delayed effective date for conditional approval of zoning petition No. 8598 had expired. The circuit court stated:

> At the time Olson filed the current action, he had lost the conditional zoning approval on his petition for rezoning. Thus, Olson stands in no different position than any other owner of land zoned A-1 EX Exclusive Agricultural in the Town of Cottage Grove who would like to rezone his or her land in the future.

The circuit court added:

> Thus, this court's ruling on the validity of § 15.15 would not "affect legal relations" between Olson and the Town. . . . The court would essentially be saying, "If Olson gets approval from the County to rezone his land from agricultural to residential, then § 15.15 should/ should not bar the Town's approval of his plat." Since there is no guarantee that the [County] Board will authorize the rezoning of Olson's land in the future and Olson does not have a vested or inherent right [to] have his property rezoned, this court's opinion as to the validity of § 15.15 is immature.
>
> . . . .
>
> Because Olson has failed to secure the necessary approvals to rezone his land, a declaration of the validity of § 15.15 will not have an immediate impact on Olson, and its future impact is too contingent to satisfy the ripeness element of justiciability.

Finally, the court concluded that Olson "ha[d] not demonstrated . . . any genuine issues of material fact that entitle[d] him to a trial." Therefore, the circuit court granted summary judgment to the Town.

¶ 23. Olson appealed, and the court of appeals reversed. *Olson,* No. 2005AP2257, unpublished slip. op., ¶ 25.

¶ 24. The court of appeals addressed the standard of review. It said the standard to review the circuit court's decision was de novo because the circuit court's decision hinged upon a question of law, namely ripeness. *Id.,* ¶ 8 (citing *Commercial Union Midwest Ins. Co. v. Vorbeck,* 2004 WI App 11, ¶ 7, 269 Wis. 2d 204, 674 N.W.2d 665). The court of appeals acknowledged that "[a] circuit court's decision to grant or deny declaratory relief is within its discretion." *Id.* (citing *Milwaukee Dist. Council 48 v. Milwaukee County,* 2001 WI 65, ¶ 36, 244 Wis. 2d 333, 627 N.W.2d 866). Nonetheless, the court of appeals concluded that de novo review was appropriate because a circuit court's decision to grant summary judgment is reviewed de novo. *Id.,* ¶ 9 (citing *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987)).

¶ 25. The court of appeals next addressed whether Olson's declaratory judgment action was ripe. In concluding that Olson's claim was ripe for adjudication, and therefore justiciable, the court of appeals held that "the possibility that the Town will apply the land division ordinance to Olson" was "real, precise, and immediate." *Id.,* ¶ 21 (citing *Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship,* 2002 WI 108, ¶ 47, 255 Wis. 2d 447, 649 N.W.2d 626). The court of appeals concluded that the declaratory relief sought by Olson "would resolve the uncertainty Olson and other developers will continue to face in the future development of their properties"; therefore, the court held that Olson's claim was ripe for adjudication, reversed the circuit court, and remanded. *Id.,* ¶¶ 24–25.

¶ 26. The Town petitioned this court for review, which we granted on April 17, 2007.

## II. ANALYSIS

¶ 27. This case presents a complex standard of review issue and a relatively simple substantive issue under Wisconsin's Uniform Declaratory Judgments Act, Wis. Stat. § 806.04 (the Act). The Act provides, in relevant part:

> (1) Scope. Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree. . . .

> (2) Power to construe, etc. Any person interested . . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder. No party shall be denied the right to have declared the validity of any statute or municipal ordinance by virtue of the fact that the party holds a license or permit under such statutes or ordinances.

> . . . .

> (6) Discretionary. The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.

> (7) Review. All orders, judgments and decrees under this section may be reviewed as other orders, judgments and decrees.

378

(12) Construction. This section is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.

¶ 28. A court must be presented with a justiciable controversy before it may exercise its jurisdiction over a claim for declaratory judgment. This is so because the purpose of the Act is to allow courts to anticipate and resolve identifiable, certain disputes between adverse parties. *Putnam,* 255 Wis. 2d 447, ¶ 43 (citing Wis. Stat. § 806.04(12); *Lister v. Bd. of Regents of Univ. of Wis. Sys.,* 72 Wis. 2d 282, 307, 240 N.W.2d 610 (1976)). "The underlying philosophy of the Uniform Declaratory Judgments Act is to enable controversies of a justiciable nature to be brought before the courts for settlement and determination prior to the time that a wrong has been threatened or committed." *Lister,* 72 Wis. 2d at 307. Therefore, before one may seek declaratory relief pursuant to the Act, he must demonstrate that his cause of action is properly before the court—namely, that it is justiciable. *Loy,* 107 Wis. 2d at 409–10.

¶ 29. The leading Wisconsin case on declaratory judgments is *Loy,* which emphasized that a declaratory judgment is fitting when a controversy is justiciable. *Id.* at 410. A controversy is justiciable when the following four factors are present:

(1) A controversy in which a claim of right is asserted against one who has an interest in contesting it.

(2) The controversy must be between persons whose interests are adverse.

(3) The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible interest.

(4) The issue involved in the controversy must be ripe for judicial determination.

*Id.* (citing *Declaratory Judgments, supra,* at 26–57). "If all four factors are satisfied, the controversy is 'justiciable,' and it is proper for a court to entertain an action for declaratory judgment." *Miller Brands-Milwaukee, Inc. v. Case,* 162 Wis. 2d 684, 694, 470 N.W.2d 290 (1991).

¶ 30. Only factor (4), ripeness, is at issue here. The circuit court determined that Olson's suit challenging the validity of § 15.15 was not ripe for adjudication, and therefore not justiciable. The court of appeals reversed, applying a de novo standard of review because: (1) the circuit court's decision hinged on a question of law; and (2) the procedural posture of the case was review of a grant of summary judgment by the circuit court. *Olson,* No. 2005AP2257, unpublished slip. op., ¶¶ 8–9.

¶ 31. Before we can evaluate the circuit court's decision to grant summary judgment to the Town, we must establish the appropriate standard to review a grant of summary judgment when declaratory relief is sought and the underlying claim is determined to be unripe, and therefore not justiciable.

A. Standard of Review

¶ 32. The standard of review issue in this case is complicated by the fact that ripeness is a necessary prerequisite to reaching the merits of and entertaining

a declaratory judgment action. *See Putnam,* 255 Wis. 2d 447, ¶ 41. Ripeness, as a component of justiciability, is a threshold jurisdictional question. *See* 1 Walter H. Anderson, *Actions for Declaratory Judgments* § 16, at 65–66 (2d ed. 1951). We cannot say that the circuit court asserted its jurisdiction, reached the merits of Olson's suit, and *denied* declaratory relief pursuant to the Act because the circuit court neither granted nor denied relief pursuant to the Act. Instead, the court concluded that it lacked jurisdiction to grant or deny declaratory relief because Olson's suit was not ripe, and it subsequently held that the Town was entitled to summary judgment as a matter of law.[5] For this reason, we review the circuit court's grant of summary judg-

---

[5] This court's decision in *Loy v. Bunderson,* 107 Wis. 2d 400, 320 N.W.2d 175 (1982), conflated the evaluation of the factors necessary to reach the merits of a declaratory judgment and the granting or denying of declaratory relief on the merits. *See Id.* at 409 ("We have frequently stated the standards for the exercise of trial court discretion to entertain and decide an action for declaratory relief.").

Determining whether a suit is or is not ripe is a legal inquiry separate and distinct from determining whether to grant or deny declaratory relief on the merits. The circuit court here determined that Olson's suit was not ripe; as a result, it did not *expressly* deny declaratory relief, either on ripeness grounds or on the merits. Instead, it granted summary judgment to the Town as a matter of law because the suit was not ripe. Therefore, the appropriate standard of review here is de novo because the circuit court's decision turned upon a question of law. *See Jones v. Secura Ins. Co.,* 2002 WI 11, ¶ 19, 249 Wis. 2d 623, 638 N.W.2d 575 (indicating that the circuit court's decision to grant declaratory relief turned upon the legal question of what damages an insured could recover in a bad faith action, which is reviewed de novo); *Commercial Union Midwest Ins. Co. v. Vorbeck,* 2004 WI App 11, ¶ 7, 269 Wis. 2d 204, 674 N.W.2d 665 (indicating that the circuit court's decision to grant declara-

ment de novo, premised upon the court's legal conclusion that Olson's case was not ripe. We do not review for an erroneous exercise of discretion.[6]

¶ 33. The language of the Act is instructive. The Act states that "[a]ll orders, judgments and decrees under this section may be reviewed as other orders, judgments and decrees." Wis. Stat. § 806.04(7). Accordingly, a summary judgment pursuant to the Act, particularly one that turns upon a question of law, should be reviewed as any other summary judgment.

¶ 34. In this appeal, we examine a circuit court's decision granting summary judgment, which is subject to de novo review. *Green Spring Farms,* 136 Wis. 2d at 315–17. A party is entitled to summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Everson v. Lorenz,* 2005 WI 51, ¶ 9, 280 Wis. 2d 1, 695 N.W.2d 298; Wis. Stat. § 802.08(2).

¶ 35. Review of a declaratory judgment is different. We have stated the standard of review for a declaratory judgment as follows:

> A decision *to grant or deny declaratory relief* falls within the discretion of the circuit court. The circuit court's decision *to grant [or deny] declaratory relief* will not be overturned unless the circuit court erroneously exer-

tory relief turned upon the construction of an insurance contract, which is reviewed de novo).

[6] In *Miller Brands-Milwaukee, Inc. v. Case,* 162 Wis. 2d 684, 470 N.W.2d 290 (1991), we applied a de novo standard to review a circuit court's grant of summary judgment on the grounds that the underlying action was not ripe for adjudication. *Id.* at 693–94. This standard should apply to Olson's case as well.

cised its discretion. This court will uphold a discretionary act if the circuit court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach."

*Putnam,* 255 Wis. 2d 447, ¶ 40 (quoting *Milwaukee Dist. Council 48,* 244 Wis. 2d 333, ¶ 36) (emphasis added). *See also Wis. Educ. Ass'n Council v. Wis. State Elections Bd.,* 156 Wis. 2d 151, 161, 456 N.W.2d 839 (1990) ("The decision to grant or deny relief in a declaratory judgment action is a matter within the sound discretion of the circuit court."); *State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 668, 239 N.W.2d 313 (1976) ("The granting or denying of relief in a declaratory judgment action is a matter within the sound discretion of the court." (citations omitted)).

¶ 36. The language of the Act indicates a discretionary standard to grant or deny declaratory relief. Wisconsin Stat. § 806.04(6) reads: "(6) *Discretionary.* The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." (Emphasis added.)

¶ 37. A ripeness determination, on the other hand, is a legal conclusion and therefore reviewed as a question of law. The Town argues that the question we must ask regarding ripeness should be: "How ripe is ripe enough?" This question implies circuit court discretion to determine whether a case is timely based upon a continuum of ripe outcomes.[7] We disagree that

---

[7] The Borchard treatise also seems to espouse this view of the ripeness determination. *See* Edwin Borchard, *Declaratory Judgments,* at 61 (2d ed. 1941) ("Judicial Discretion. Whether

this is the question courts must ask because ripeness should not be conceptualized as a sliding scale of possibilities. The proper question is simply: "Is the action ripe?" This question requires the circuit court to make a legal conclusion—"ripe" or "not ripe"—based upon the facts at hand and the standards set forth by the Act and our precedents.

¶ 38. We find support for our conclusion that de novo review is the proper standard to review a ripeness determination in cases from other jurisdictions. The Pennsylvania Supreme Court, reviewing the dismissal of a declaratory judgment suit, recently stated: "We regard the matter of whether a proceeding is ripe as a question of law, as to which our standard of review is de novo, and our scope of review is plenary." *Twp. of Derry v. Pa. Dep't of Labor & Indus.*, 932 A.2d 56, 59 (Pa. 2007). The Arkansas Supreme Court reached a similar conclusion: "On appeal, the question as to whether there was a complete absence of a justiciable issue shall be reviewed de novo on the record of the trial court." *McKinnon v. Norris*, 231 S.W.3d 725, 732 n.6 (Ark. 2006). The Third, Fifth, Ninth, and Tenth Circuits also review ripeness determinations in declaratory judgment actions under a de novo standard of review. *Wyatt, Virgin Is., Inc. v. Gov't of the Virgin Is. ex rel. Virgin Is. Dep't of Labor,* 385 F.3d 801, 805 (3rd Cir. 2004) ("We exercise plenary review over whether a cause of action is ripe."); *Venator Group Specialty v. Matthew,* 322 F.3d 835, 838 (5th Cir. 2003) (stating that "this court reviews de novo the question of whether a controversy is ripe for adjudication"); *Principal Life Ins. Co. v. Robinson,*

the facts are *ripe enough* for determination is usually a matter confided to the discretion of the court. Opinions may differ on such questions.") (emphasis added).

394 F.3d 665, 669 (9th Cir. 2005) ("We review de novo . . . the question of ripeness . . . "); *New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1499 (10th Cir. 1995) ("Ripeness is a question of law, which we review de novo."). We agree with these courts and conclude that ripeness, as it pertains to declaratory judgments, is a legal conclusion subject to de novo review.

¶ 39. Whether we focus our analysis on the circuit court's ultimate decision—to grant summary judgment to the Town—or on the legal predicate for that decision —the determination that Olson's case was not ripe, and therefore not justiciable—our standard of review is the same, de novo. *See Miller Brands-Milwaukee,* 162 Wis. 2d at 693–94. However, we find it more appropriate to base our holding on the circuit court's ripeness determination because it is the narrowest indicator of the circuit court's reasoning to grant summary judgment to the Town. Therefore, we review the circuit court's legal conclusion that Olson's cause of action was not ripe, and therefore not justiciable, de novo.

## B. Ripeness

¶ 40. We now address whether the circuit court properly granted the Town's motion for summary judgment because it determined that Olson's suit for declaratory judgment was not ripe, and therefore not justiciable.

¶ 41. We agree with the court of appeals' assessment that "[t]he nature of this controversy is precisely the type to be resolved by a declaratory judgment." *Olson,* No. 2005AP2257, unpublished slip. op., ¶ 15 (citing *Weber v. Town of Lincoln,* 159 Wis. 2d 144, 148,

463 N.W.2d 869 (Ct. App. 1990)). The Act expressly provides for the declaration of rights with regard to municipal ordinances:

> *Any person* interested . . . *whose rights, status or other legal relations are affected by a* statute, *municipal ordinance,* contract or franchise, *may have determined any question of construction or validity arising under the* instrument, statute, *ordinance,* contract or franchise *and obtain a declaration of rights, status or other legal relations thereunder.*

Wis. Stat. § 806.04(2) (emphasis added).

¶ 42. The Act is to be liberally construed and administered to achieve a remedial purpose. Wis. Stat. § 806.04(12). The Act's stated purpose is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." *Id.* We have stated that "[t]he preferred view appears to be that declaratory relief is appropriate wherever it will serve a useful purpose." *Lister,* 72 Wis. 2d at 307. Here, Olson's suit will serve the useful purpose of settling the uncertainty that Town landowners face with regard to whether they must first comply with the ordinance to obtain final plat approval and, subsequently, rezoning approval. Olson's declaratory suit was an effort to avoid subjecting himself to financial loss due to compliance with an ordinance he believed the Town had no legal or constitutional authority to impose.

¶ 43. We have previously commented on the legal question of ripeness in the declaratory judgment context. By definition, the ripeness required in declaratory judgment actions is different from the ripeness required in other actions. *Putnam,* 255 Wis. 2d 447, ¶ 44 (citing *Milwaukee Dist. Council 48,* 244 Wis. 2d 333,

¶ 41). In *State ex rel. Lynch v. Conta,* this court analyzed a declaratory judgment involving a forfeiture statute. *Lynch,* 71 Wis. 2d at 674. It declared that potential defendants "may seek a construction of a statute or a test of its constitutional validity without subjecting themselves to forfeitures or prosecution." *Id.* (citations omitted).[8] Thus, a plaintiff seeking declaratory judgment need not actually suffer an injury before availing himself of the Act. *Milwaukee Dist. Council 48,* 244 Wis. 2d 333, ¶ 41. What is required is that the facts be sufficiently developed to allow a conclusive adjudication. *Id.*; *Lynch,* 71 Wis. 2d at 674 (citing *Declaratory Judgments, supra,* at 56). As we stated in *Miller Brands-Milwaukee,* "the facts [must] be sufficiently developed to avoid courts entangling themselves in abstract disagreements." 162 Wis. 2d at 694 (citing *Loy,* 107 Wis. 2d at 412, 414). The facts on which the court is asked to make a judgment should not be contingent or uncertain, but not all adjudicatory facts must be resolved as a prerequisite to a declaratory judgment. *Miller Brands-Milwaukee,* 162 Wis. 2d at 694–95 (citing *Loy,* 107 Wis. 2d at 412).

¶ 44. Olson brought this declaratory judgment action to determine the validity of § 15.15, which created the TDR provisions of the Town's Land Division and Planning Code. He argues that the ordinance impacts him and that his cause is ripe because he seeks to acquire rezoning of his property, located in a "receiving area" under § 15.15, so that he can subdivide and develop it. The County conditioned rezoning approval

---

[8] One commentator has noted that declaratory judgment actions must give property owners a means to determine "their legal rights *before* they subject[] themselves to damages and loss . . . ." 4 Kenneth H. Young, *Anderson's American Law of Zoning* § 30:1, at 740 (4th ed. 1996) (emphasis added).

upon Olson acquiring final plat approval from the Town within one year of the County's conditional rezoning approval. The Town then conditioned final plat approval upon Olson acquiring 10 TDRs and transferring them to the Town and County, to comply with § 15.15. Olson alleges that compliance with the TDR provisions of § 15.15 would come at an expense he cannot afford. Olson advances several legal theories to challenge the validity of § 15.15.[9] Specifically, Olson's complaint al-

---

[9] At oral argument the parties addressed whether Olson's lawsuit was a facial or an as-applied challenge to § 15.15. *Black's Law Dictionary* defines "as-applied challenge" as: "A lawsuit claiming that a law or governmental policy, though constitutional on its face, is unconstitutional as applied, usually because of a discriminatory effect; a claim that a statute is unconstitutional on the facts of a particular case or to a particular party." *Black's Law Dictionary* 223 (7th ed. 1999). "Facial challenge" is defined as: "A claim that a statute is unconstitutional on its face—that is, that it always operates unconstitutionally." *Id.* One commentator has stated the following with regard to facial and as-applied challenges:

> If a court holds a statute unconstitutional on its face, the state may not enforce it under any circumstances, unless an appropriate court narrows its application; in contrast, when a court holds a statute unconstitutional as applied to particular facts, the state may enforce the statute in different circumstances.

Michael C. Dorf, *Facial Challenges to State and Federal Statutes,* 46 Stan. L. Rev. 235, 236 (1994).

In reviewing Olson's complaint, we observe that Olson's declaratory judgment suit encompasses both facial and as-applied challenges to § 15.15. Olson's complaint seeks to have § 15.15 declared universally invalid as it applies to *all* Town landowners because the Town has exceeded its statutory authority in enacting the ordinance and because the ordinance violates both the state and federal constitutions. Olson's complaint also alleges that the ordinance has been applied to him in an unconstitutional manner because there is no rational rela-

leges that: (1) the ordinance imposes an illegal exaction upon land division as a final condition of plat approval without statutory authorization in Wis. Stat. ch. 236; (2) the ordinance constitutes an unlawful impact fee under Wis. Stat. § 66.0617; (3) the Town lacked the County's authorization or approval to adopt the ordinance pursuant to Wis. Stat. § 60.62(3); (4) the Town's application of the ordinance constituted an uncompensated taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 13 of the Wisconsin Constitution; (5) the Town's ex post facto application of the ordinance to Olson's property violated his rights to substantive and procedural due process pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 1 of the Wisconsin Constitution;

---

tionship between his desire to develop his land and the Town's imposition of the TDR program's "exaction." Olson's complaint also states an as-applied challenge that the ordinance has been applied to his property ex post facto because it was enacted after he requested preliminary plat approval.

The fact that Olson's suit includes both facial and as-applied challenges does not substantially impact our analysis nor alter our conclusion that his suit is ripe. As an as-applied challenge, Olson's suit is ripe, in part, because the "government entity charged with implementing the [ordinance] has reached a final decision regarding the application of the [ordinance] to the property at issue." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985). The Town conditioned Olson's final plat approval upon compliance with the ordinance, and Olson was left with no administrative option to challenge this decision. As a facial challenge, Olson's suit is ripe because it challenges the very enactment of the ordinance and its application to all Town landowners. Such challenges to ordinances are generally ripe the moment the challenged ordinance is passed. *See Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 736 n.10 (1997).

and (6) the ordinance amounts to a public taking of private property for a private purpose, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 13 of the Wisconsin Constitution. Olson asserts that these allegations and the facts of his case meet the standard for ripeness under Wis. Stat. § 806.04 and the Wisconsin precedents addressing ripeness in the declaratory judgment context.

¶ 45. The Town insists that Olson's suit is not ripe, and therefore not justiciable. It asserts that Olson's interests, if any, are too contingent and uncertain to be ripe. The Town contends that Olson's interest in rezoning is a "future contingent interest," which is not sufficient for purposes of the Act. The Town asserts that since the property in question has not yet been rezoned, Olson has no vested interest in developing his property because "the ordinance imposes no obligations on Olson unless and until the County changes the zoning from agricultural to residential." Furthermore, the Town contends, the conditional zoning change granted by the County has expired, so that Olson is now no different from any other landowner in the Town that may pursue development in the future. The Town notes that even if § 15.15 were applied to Olson, there is no factual evidence in the record that compliance with § 15.15 would come at any great expense to Olson.

¶ 46. The Town also argues, but cites no authority, that Olson's case is now moot because "development conditions in Dane County [are] changing" and because the Town's TDR ordinance has been amended twice since 2002, most recently on May 7, 2007.

¶ 47. We agree with Olson and conclude that, under the facts of record, Olson's claim for declaratory relief is ripe, and therefore justiciable. In support of this

conclusion, we must clear up a factual dispute in the record, which the court of appeals chose not to address.[10]

¶ 48. As noted above, the parties disagree over whether Olson's second zoning petition was rescinded at a County Board meeting held on February 5, 2004. The record includes minutes of the proceedings, which read in part:

> The question before the Board was Supervisor Hulsey's motion at the last County Board meeting to *rescind action on Zoning Petition 8598*—Town of Cottage Grove. Motion carried. Moved by Supervisor Hulsey, seconded by Supervisor O'Loughlin, to extend for one year the delayed effective date. Motion carried.

Proceedings of the Dane County Board of Supervisors, Vol. 90, April 2003–2004 (emphasis added).

¶ 49. The circuit court reasoned that the underlined portion of this excerpt indicates that Olson's second zoning petition, No. 8598, was rescinded by the County Board and that the succeeding motion to extend the delayed effective date of the conditional rezoning approval by Supervisor Hulsey was a nullity. The circuit court's reasoning and conclusions regarding these actions were erroneous because they misconstrued the intent of the County Board.

---

[10] The court of appeals noted that the parties "appear to dispute whether the extension of time the County Board gave Olson was effective." *Olson v. Town of Cottage Grove*, No. 2005AP2257, unpublished slip. op., ¶ 6 n.2 (Wis. Ct. App. Dec. 28, 2006). The court of appeals did not view this issue as germane and chose not to address it. *Id.*

We disagree with the court of appeals' conclusion that this fact is unimportant.

¶ 50. In this case, the circuit court correctly ascertained that Olson's second zoning petition was rescinded by the County Board. However, the circuit court misinterpreted the meaning of that action because it did not take into account the reality that the term "rescind" can have a different meaning in a legislative body's lexicon.

¶ 51. The history of Olson's second petition is clear. The minutes of the County Board's meeting on January 23, 2003, read in part as follows:

> *PETITION 8598—ZONING CHANGE IN THE TOWN OF COTTAGE GROVE—ZONING ORD. AMDT. 8598*
>
> Petition 8598 by Walter J. Olson to change the zoning from A-1 EX Exclusive Agricultural district to the R-1 Residential district on property located north, east, and south of 4500 and 4506 Kennedy Road in part of the SW 1/4 SE 1/4, Section 3, and NW 1/4 NE 1/4, Section 10—Town of Cottage Grove.
>
> The Zoning & Natural Resources Committee recommends that Petition 8598 be granted as modified, including the [c]ondition below, and includes the condition that an approved plat be recorded within one year, and Zoning Ord. Amdt. 8598 be adopted. Motion carried.
>
> *Condition:*
>
> 1. That the applicant withdraw petition 8357 as a condition of approval of petition 8598.

¶ 52. On January 20, 2004, Norbert Scribner of the Land Division Review Department of the Dane County Planning and Development Commission reminded Olson that zoning petition No. 8598 had a delayed effective date of February 14, 2004, *provided*

that an approved plat was recorded in the office of the Dane County Register of Deeds no later than that date.

¶ 53. On January 22, 2004, Supervisor Hulsey moved to "rescind action on Zoning Petition 8598–Town of Cottage Grove." The minutes reflect that the motion "will be on the Calendar for the next regular meeting of the County Board."

¶ 54. On February 5, 2004, the County Board approved Supervisor Hulsey's motion to rescind, whereupon he moved, with a second from Supervisor O'Loughlin, "to extend for one year the delayed effective date. Motion carried."[11]

¶ 55. The County Board's action implies that it voted to give Olson an additional year to record the plat. Such an action would have been consistent with the helpful reminder from the Dane County Planning and Development Commission. It would have responded to Olson's request for an extension. It would not have cut short the time that the County Board had already given Olson. It would not have made the County Board's next action a nullity.

¶ 56. The legislative jargon at play is contained in the Dane County Board Rules for the 2002–2004 term. Rule 7.65 reads, in its entirety:

---

[11] At oral argument, counsel for Olson indicated that after he left the County Board meeting on February 5, 2004, he believed that the Board had extended Olson's prior conditional rezoning approval and that his client had one more year to acquire ultimate rezoning by filing a final plat with the Town. Counsel asserted that, after this meeting, the Town tried to help him acquire the TDRs necessary for final plat approval. When Olson filed his suit on September 30, 2004, his counsel believed that Olson had conditional rezoning, based upon what transpired at the February 5, 2004, County Board meeting. The record reflects that this belief was not unfounded.

## 7.65 COUNTY BOARD MEETINGS; RECONSIDERATION AND RESCISSION.

(1) The motion to reconsider any action may be made only by a supervisor who voted with the prevailing side, and it must be seconded.

(2) A motion to reconsider shall be made on the day the action to be reconsidered took place and the clerk shall record the motion in the minutes.

(3) The motion to reconsider shall then become an item of business on the calendar of the next meeting of the board under the heading "Motions to reconsider," unless the motion is acted on, on the day made, by suspension of the rules.

(4) A member shall not be allowed to speak more than once on a motion for reconsideration, for not more than 5 minutes.

(5) The rule that a motion to reconsider shall become an item of business at the next meeting of the board shall not apply to a motion to reconsider action taken on an amendment to a measure pending before the board at that time, only to the main measure an amendment is supposed to amend.

(6) If the matter to be reconsidered is of such a nature that it requires final immediate action, the motion to reconsider shall be taken up immediately.

(7) A motion to rescind an action may be made by any member at any time but such motion requires the support of the majority of all supervisors elected, provided, however, that such rescission will not be inconsistent with actions that have been commenced because of the action to be rescinded and will not result in consequences inimical to the interests of the public or the county.

394

Dane County, Wis., County Board Rules, (2002–04 term) (rev. Apr. 30, 2002).

¶ 57. Rule 7.65 provides for reconsiderations and rescissions. "A motion to reconsider shall be made *on the day the action to be reconsidered took place* and the clerk shall record the motion in the minutes." (Emphasis added.) "The motion to reconsider shall then become an item of business on the calendar of the next meeting of the board." By contrast, motions to rescind an "action" may be made "at any time" with certain conditions. In other words, a motion to rescind is effectively a motion to reconsider an "action," but it is a motion to "reconsider" made on a day sometime after the day when the "action" to be reconsidered took place. Repealing or amending an ordinance is not a matter covered by this rule.

¶ 58. Under the Dane County Board Rules, rescinding an "action" on, say, a petition, reopens consideration of that petition. It does not kill the petition. A follow-up motion is likely to show a new disposition of the "action" on the petition. Thus, on February 5, 2004, we see immediately above Supervisor Hulsey's motion the following:

> The question before the Board was Supervisor Wiganowsky's motion at the last County Board meeting to *rescind action on Zoning Petition 8832—Town of Sun Prairie.* Motion carried. Moved by Supervisor Wiganowsky, seconded by Supervisor Wendt, to refer Petition 8832 to the Zoning & Natural Resources Committee. Motion carried.

Proceedings of the Dane County Board of Supervisors, Vol. 90, April 2003–2004 (emphasis added).

¶ 59. Clearly, Supervisor Wiganowsky's second motion effects a different disposition of a petition than Supervisor Hulsey's second motion did.

¶ 60. In *State ex rel. La Follette v. Stitt,* 114 Wis. 2d 358, 338 N.W.2d 684 (1983), this court considered an original action for a declaratory judgment that "the State of Wisconsin Operating Notes of 1983 when issued, sold and delivered in the manner provided by the Authorizing Resolution issued by the State Building Commission . . . will be valid enforceable contractual obligations of the State of Wisconsin." *Id.* at 360–61. The respondents contended that 1983 Wisconsin Act 3, upon which the Authorizing Resolution was based, was invalid because the legislature had violated its own procedure. *Id.* at 361. This court said that it "will not determine whether internal operating rules or procedural statutes have been complied with by the legislature in the course of its enactments." *Id.* at 364. If we did, it "would imply that this court will review legislative conduct to ensure the legislature complied with its own procedural rules or statutes in enacting the legislation. . . . [W]e conclude we will not intermeddle in what we view, in the absence of constitutional directives to the contrary, to be purely legislative concerns." *Id.*

¶ 61. The same principle applies in this case. Here, the circuit court concluded, in essence, that the County Board did not know what it was doing. In so holding, the court implied that the County Board—in violation of Rule 7.65—shortened the time for Olson to file a plat and then took a meaningless, ineffectual action to extend the life of something that was already dead. If this were a correct reading of the law, it would jeopardize any zoning actions that were "rescinded" at some point without being explicitly reapproved, as well as countless other "actions" that may have been "rescinded" along the line before the legislative process was complete. The Dane County Board is entitled to

make its own rules of procedure, so long as they do not conflict with some explicit constitutional directive, and courts should not second-guess the County Board's procedural rules.

¶ 62. The circuit court simply misinterpreted the County Board's action. The County Board passed a motion to "rescind *action* on" a petition, reflecting a common practice by the board. Therefore, contrary to the circuit court, we conclude that the County Board did not eliminate conditional approval of Olson's second zoning petition during its February 5, 2004, meeting, but instead extended the delayed effective date of conditional approval for one year.

¶ 63. This fact is important because it demonstrates that Olson, possessing conditional rezoning approval from the County, was subject to compliance with § 15.15 when he filed his suit on September 30, 2004. This is so because Olson was required to file a final plat with the Town to receive ultimate rezoning approval from the County, and the Town required Olson to first comply with § 15.15 by acquiring 10 TDRs before it would allow him to file his final plat. Therefore, Olson's efforts to rezone, subdivide, and develop his property were directly impacted by application of the ordinance when he filed his suit.

¶ 64. We note that Olson's interest, and the impact of the ordinance on him individually, differs from the interest of any receiving area landowner in the Town who had not yet put the wheels in motion to secure conditional rezoning and plat approval from the County and Town. The Town characterizes Olson's interest in rezoning his property as a "future contingent interest," but this label ignores the fact that Olson received conditional rezoning approval from the County and conditional plat approval from the Town, both of

which distinguish him from a receiving area landowner who had no interest in seeking to rezone his property for purposes of development. As both the Town and Olson recognized in their briefs, "ripeness is peculiarly a question of timing." *Reg'l Rail Reorganization Act Cases,* 419 U.S. 102, 140 (1974); *see also Mich. Chiropractic Council v. Comm'r of Office of Fin. and Ins. Servs.,* 716 N.W.2d 561, 571 (Mich. 2006); *Herbst Gaming, Inc. v. Heller,* 141 P.3d 1224, 1230–31 (Nev. 2006). A declaratory judgment action filed by a receiving area landowner who had taken no steps to: (1) obtain final rezoning approval; or (2) proceed with development after receiving final rezoning approval, would present a different and much more difficult question. Olson's final rezoning approval was expressly conditioned upon compliance with § 15.15, so that his cause of action challenging the ordinance was timely and ripe for adjudication.

¶ 65. We disagree with the Town's assertion that Olson's declaratory judgment suit is untimely because it is premised upon a "future" zoning change. It is undisputed that Olson has not yet been granted final rezoning of his property. Clearly, if final rezoning were granted, Olson's development project would be subject to the ordinance, as his property lies in a "receiving area." However, it is plain from the record that the ultimate zoning change Olson desires will come only if he first complies with § 15.15. Adopting the Town's argument would place Olson in the unenviable position of having no right to avail himself of the Act to challenge the ordinance, which the Town demands he *first* comply with in order to avail himself of the Act. The absurdity of this circular reasoning is self-evident and emphasizes the catch-22 that the Town is trying to perpetuate. Olson need not suffer an injury, namely compliance with the ordinance by purchasing TDRs, in order to bring a

declaratory judgment action pursuant to the Act. *See Putnam,* 255 Wis. 2d 447, ¶ 44. The Town has placed the impediment of compliance with § 15.15 in the way of Olson securing rezoning from an agricultural to a residential zone. Olson need not first comply with the ordinance to pursue a judicial declaration that he need not comply.

¶ 66. We also find irrelevant the Town's assertion that Olson has not demonstrated that compliance with § 15.15 will come at great expense to him. If Olson were to succeed on the merits of his declaratory judgment suit, any and all expenses directly related to compliance with § 15.15 would be unjust because the ordinance would be declared invalid. The fact that Olson allegedly does not possess the financial means to comply with an ordinance he asserts is illegal is of no import to determining the ripeness of his claim.

¶ 67. Olson's declaratory judgment suit is ripe, much like the suits of the plaintiffs in *Putnam* and *Milwaukee Dist. Council 48.* In *Putnam,* this court reviewed the declaratory judgment suit of a group of cable television customers of Time Warner Cable of Southeastern Wisconsin, LP (Time Warner), who sought a declaration of rights and an injunction to prevent Time Warner from imposing a $5 late-payment fee on cable customers who failed to pay their monthly cable bills on time. *Putnam,* 255 Wis. 2d 447, ¶ 4. The circuit court dismissed the customers' suit with prejudice on the grounds that the suit was not ripe, and therefore not justiciable. *Id.,* ¶ 7. We reversed, concluding that the customers' suit was ripe and justiciable. *Id.,* ¶ 52. In doing so, we rejected Time Warner's argument that the late-payment fees might never be imposed because customers control whether their bills are paid on time. *Id.,* ¶ 45. We concluded that there was no "absence of cer-

tainty" that the late-payment fee would be applied to Time Warner customers, *id.,* because the plaintiffs alleged (and Time Warner did not dispute) that, on average, 10 to 15 percent of Time Warner customers paid the late fee each month. *Id.,* ¶ 46. The plaintiffs' suit challenging Time Warner's legal right to impose the fee was ripe because application of the fee to cable customers was "real, precise, and immediate," not "hypothetical, abstract, or remote." *Id.,* ¶ 47.

¶ 68. In *Milwaukee Dist. Council 48,* this court reviewed a declaratory judgment suit brought by a labor union against Milwaukee County and the Milwaukee County Pension Board. *Milwaukee Dist. Council 48,* 244 Wis. 2d 333, ¶ 20. The union's suit alleged that the county was misconstruing a pension ordinance and labor agreement to mean that if an employee is terminated for "cause" after ten years of service, the employee is disqualified from receiving a deferred vested pension. *Id.* We addressed the justiciability of the suit and concluded that it was both ripe and justiciable. *Id.,* ¶¶ 42, 46–47. We rejected the arguments of the county that the matter was not ripe because a named plaintiff had not officially been denied a pension and "because a pension cannot vest under its agreement with the employees before an employee has completed honorable service for the county." *Id.,* ¶ 42. We concluded that the union's claim was ripe because it sought "a declaration of law concerning the procedural due process available to an employee to contest termination of employment and loss of pension when the determination of one may lead automatically to the determination of the other." *Id.,* ¶ 43. Furthermore, we held that "[a]n employee need not have been denied pension benefits to satisfy the ripeness required in this type of action." *Id.,* ¶ 44 (citing *Lynch,* 71 Wis. 2d at 674).

¶ 69. Olson's case is similar to both *Putnam* and *Milwaukee Dist. Council 48*. In *Putnam,* we observed that 10 to 15 percent of customers would be impacted by the late-payment fee in question. *Putnam,* 255 Wis. 2d 447, ¶ 46. Here, we observe that all receiving area landowners who must acquire rezoning to develop their properties will be subject to the ordinance and required to obtain TDRs. Like the plaintiffs in *Putnam,* Olson faces the "real, precise, and immediate," *id.,* ¶ 47, certainty that his financial interests will be impacted, either positively or negatively, by a circuit court's declaration regarding the validity of the ordinance. If the ordinance is declared valid, Olson will face the prospect of choosing between: (1) acquiring TDRs to receive final plat and rezoning approval; or (2) not acquiring TDRs and abandoning his original subdivision development project. If the ordinance is declared invalid by the circuit court, Olson will be saved the expense of having to purchase TDRs to obtain final plat approval and rezoning and can proceed with his project once final rezoning is settled. Both of these potential outcomes are certain to have a direct and immediate financial impact on Olson.

■

¶ 70. Olson's case is also similar to *Milwaukee Dist. Council 48* because the ordinance validity issue here, like the procedural due process issue in that case, stands as a "prelude" to the ultimate question of whether Olson can obtain rezoning approval from the County. *See Milwaukee Dist. Council 48,* 244 Wis. 2d 333, ¶ 43. Because the Town has made compliance with the ordinance a prerequisite to obtaining final rezoning approval, Olson must currently clear the preliminary hurdle of acquiring enough TDRs to obtain plat approval to receive final rezoning of his property. There-

fore, the validity of the ordinance directly impacts the likelihood that Olson's project will go forward. Furthermore, our observation in *Milwaukee Dist. Council 48* that "[a]n employee need not have been denied pension benefits to satisfy the ripeness required," *id.*, ¶ 44, is applicable by analogy here; Olson need not first suffer the financial injury of purchasing TDRs for his suit to be ripe. Although the law does not require Olson to suffer injury to challenge § 15.15, we agree with the court of appeals' statement that "a reasonable view of Olson's experience in attempting to redevelop his land is that he has indeed suffered injury." *Olson,* No. 2005AP2257, unpublished slip. op., ¶ 17.

¶ 71. The Town's final argument that Olson's claim is moot because § 15.15 has been amended during the pendency of this litigation is not persuasive. The Town's statement that "[a] declaratory judgment action on an ordinance that is now different will be of limited, if any, value" misses the point. Olson's suit seeks the right to challenge § 15.15 as it existed at the time of his lawsuit to resolve the uncertainty regarding the validity of the ordinance faced by him and other landowners concerning the future development of their properties. The Town's application of that version of § 15.15 to Olson is not "contingent or uncertain." *Putnam,* 255 Wis. 2d 447, ¶ 44. The Town has expressly conditioned Olson's final plat approval upon compliance with the ordinance; it is certain that Olson will have to comply with the ordinance to proceed with his subdivision project. Therefore, Olson's suit is ripe.[12]

---

[12] We acknowledge that the ordinance has been amended as recently as May 7, 2007. However, this does not impact whether Olson's September 30, 2004, lawsuit, challenging the ordinance

¶ 72. In sum, the circuit court's grant of summary judgment to the Town, premised upon the legal conclusion that Olson's suit was not ripe, and therefore not justiciable, was error. Under this court's standards for justiciability, Olson's action for declaratory relief is ripe, and therefore justiciable.

## III. CONCLUSION

¶ 73. We conclude that the appropriate standard to review a circuit court's grant of summary judgment premised upon the legal conclusion that a declaratory judgment action is not ripe, and therefore not justiciable, is de novo review. Applying this standard to the record before us, we conclude that Olson's cause of action challenging Town of Cottage Grove, Wis., Land Division and Planning Code § 15.15 is ripe, and therefore justiciable. Accordingly, we affirm the court of appeals and remand for proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is affirmed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 74. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I concur in the court's mandate. I agree with the majority opinion that Olson's rezoning petition was approved, conditional upon his compliance with the ordinance that he challenges, when he filed his action.[1]

as it existed then, was ripe upon filing. The ripeness of a future suit by Olson challenging the most recent version of the ordinance or its applicability to Olson's property is not at issue here, and we need not address this concern.

[1] Majority op., ¶ 62.

Olson's efforts to rezone his property were therefore, as the majority opinion states, "directly impacted by application of the ordinance when he filed his suit."[2] I conclude that the circuit court erroneously exercised its discretion by resting its determination of ripeness on an erroneous standard of law. The circuit court's determination rested on its erroneous interpretation of the Dane County Board's decision to "rescind action" on Olson's zoning petition and to extend the petition's delayed effective date.[3]

¶ 75. I write separately to protest the majority opinion's conclusion that a circuit court's determination of ripeness is a legal conclusion and therefore reviewed by this court independently of the circuit court as a question of law.[4] The majority opinion disregards clear Wisconsin precedent that the question whether an issue is ripe for judicial determination under the Declaratory Judgments Act lies within the sound discretion of the circuit court.

¶ 76. I begin with *Loy v. Bunderson,* 107 Wis. 2d 400, 320 N.W.2d 175 (1982), "[t]he leading Wisconsin case on declaratory judgments."[5] *Loy* held that the question whether a controversy is ripe for judicial determination under the Declaratory Judgments Act lies within the circuit court's discretion. The *Loy* court emphasized the importance of permitting a "trial judge . . . discretion to examine the controversy before him to determine the imminence of the controversy or the ripening of the dispute" and stated that the issue of

---

[2] *Id.,* ¶ 63.

[3] *See Id.,* ¶¶ 48–62.

[4] *Id.,* ¶¶ 37–39.

[5] *Putnam v. Time Warner Cable of Se. Wis.,* 2002 WI 108, ¶ 41, 255 Wis. 2d 447, 649 N.W.2d 254.

ripeness is "exactly the area in which judicial discretion should be allowed to operate."[6]

¶ 77. In support of its decision, the *Loy* court adduced Edwin Borchard, *Declaratory Judgments* 61 (2d ed. 1941), the cited page of which explains that in declaratory judgment actions, "[w]hether the facts are ripe enough for determination is usually a matter confided to the discretion of the court." We also characterized the entire matter of justiciability (including ripeness)[7] as "[t]he ultimate fact to be found by a circuit court in the exercise of its discretion."[8]

¶ 78. The *Loy* court used the standard language to describe this court's review of a circuit court's discretionary decision: "While, as in all discretionary acts of a court, reasonable persons may sometimes differ in the outcome, all that this court need find to sustain a discretionary act is that the trial court examined the relevant facts, applied a proper standard of law, and,

---

[6] *Loy v. Bunderson,* 107 Wis. 2d 400, 414, 320 N.W.2d 175 (1982).

[7] As the majority opinion states, majority op., ¶ 29, "ripeness" is the final factor in a list of four required for the controversy underlying an action for declaratory judgment to be justiciable. A controversy is justiciable under the Declaratory Judgments Act when each of the following conditions is met:

(1) a claim of right is asserted against one who has an interest in contesting it;

(2) the controversy is between persons whose interests are adverse;

(3) the party seeking declaratory relief has a legal interest in the controversy—that is to say, a legally protectible interest; and

(4) the issue involved in the controversy is ripe for judicial determination.

Majority op., ¶ 21.

[8] *Loy,* 107 Wis. 2d at 410.

using a demonstrated rational process, reached a conclusion that a reasonable judge could reach."[9]

¶ 79. The majority opinion pays full-voiced tribute to the *Loy* decision in the body of the opinion yet renounces the decision in the whisper of a footnote. In its main text, the majority opinion properly identifies *Loy* as the leading Wisconsin case on declaratory judgments and relies upon *Loy*'s seminal discussion of justiciability.[10] In a footnote the majority opinion then laments that *Loy* "conflated the evaluation of the factors necessary to reach the merits of a declaratory judgment and the granting or denying of declaratory relief on the merits."[11]

¶ 80. Further on, the majority opinion silently overrules *Loy*'s core holding that whether an issue is ripe for judicial determination under the Declaratory Judgments Act lies within the circuit court's discretion. The majority opinion now declares that the standard of review of the circuit court's determination that Olson's case was not ripe is the same as the standard of review of a decision to grant summary judgment: de novo.[12]

¶ 81. Nor is *Loy* the only decision silently overruled by the majority opinion in the present case. There are more.

¶ 82. In *Wisconsin Education Association Council v. Wisconsin State Elections Board,* 156 Wis. 2d 151, 456 N.W.2d 839 (1990) (hereinafter *WEAC I*), we re-

---

[9] *Id.* at 414–15. *See also State v. Jenkins,* 2007 WI 96, ¶ 30, 303 Wis. 2d 157, 736 N.W.2d 24 (citing *Loy,* 107 Wis. 2d at 414–15, as authority stating the standard of review for a circuit court's discretionary determination).

[10] Majority op., ¶ 29.

[11] *Id.,* ¶ 32 n.5.

[12] *Id.,* ¶ 39.

viewed under a discretionary standard the circuit court's determination of ripeness in a declaratory judgment action. The circuit court in *WEAC I* refused to address the plaintiff's "as-applied" constitutional challenge to a statute on the ground that the issues raised by the plaintiff were not ripe for determination.[13] The court sustained the circuit court's decision, holding that "the circuit court did not abuse its discretion in concluding that the case was not ripe for determination."[14] We explained that "[o]ur review of the record persuades us that the circuit court reasonably concluded that the instant controversy was sufficiently contingent and uncertain so as to preclude declaratory relief."[15]

¶ 83. In *Putnam v. Time Warner Cable of Southeastern Wisconsin*, 2002 WI 108, 255 Wis. 2d 447, 649 N.W.2d 626, this court again reviewed under a discretionary standard the circuit court's determination of ripeness in a declaratory judgment action. The circuit court in *Putnam* granted Time Warner's motion to dismiss the plaintiff's claim for declaratory judgment, having concluded that the controversy was not ripe for resolution because the plaintiff's amended complaint failed to allege a present harm.[16]

¶ 84. The issue presented for review in *Putnam* was whether "the circuit court erroneously exercise[d] its discretion when it concluded that the [plaintiff's] request for a declaration of rights and injunctive relief . . . was not justiciable because the [plaintiff] failed

---

[13] *Wis. Educ. Ass'n Council v. Wis. State Elections Bd. (WEAC I)*, 156 Wis. 2d 151, 154, 456 N.W.2d 839 (1990).

[14] *Id.* at 154.

[15] *Id.* at 162.

[16] *Putnam v. Time Warner*, 2002 WI 108, ¶ 7, 255 Wis. 2d 447, 649 N.W.2d 626.

to allege a present harm."[17] In determining whether the circuit court had erroneously exercised its discretion in determining justiciabilty, the court applied the usual test for appellate review of a circuit court's exercise of discretion: "This court will uphold a discretionary act if the circuit court 'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.' "[18]

¶ 85. In keeping with this standard for reviewing discretionary decisions of a circuit court, the *Putnam* court concluded that the circuit court had erroneously exercised its discretion because the circuit court had made an error of law: "Because the circuit court misapplied the governing law by dismissing the [plaintiff's] claims for declaratory relief on the basis that it did, we conclude that the circuit court erroneously exercised its discretion."[19]

¶ 86. Although not focused on the issue of ripeness, *Wisconsin Education Association Council v. Wisconsin State Elections Board,* 2000 WI App 89, 234 Wis. 2d 349, 610 N.W.2d 108 (hereinafter *WEAC II*), is also put in jeopardy by the majority opinion in the present case. In *WEAC II,* the court of appeals applied a discretionary standard when reviewing the circuit court's determination that an action for declaratory judgment presented a justiciable controversy. The court of appeals stated that "in a declaratory judgment action, if the trial court carefully examines all the facts of record in considering the four [components of the test

---

[17] *Id.,* ¶ 2.

[18] *Id.,* ¶ 40 (quoting *Milwaukee Dist. Council 48 v. Milwaukee County,* 2001 WI 65, ¶ 36, 244 Wis. 2d 333, 627 N.W.2d 866).

[19] *Putnam,* 255 Wis. 2d 447, ¶ 52.

for justiciability], and reasonably concludes that a controversy is justiciable, we must uphold that conclusion."[20]

¶ 87. Although the *WEAC II* court of appeals reversed the circuit court's judgment on the basis that the first two conditions of a justiciable controversy were unfulfilled as a matter of law,[21] the standard of review set forth by the court of appeals expressly applied to all four conditions of justiciability, including ripeness.

¶ 88. The majority opinion finds support for its conclusion that de novo review is proper in case law from other jurisdictions.[22] Case law from other states is merely of persuasive weight. Prior Wisconsin case law is precedent. The approach the majority opinion should be taking is to follow binding precedent of this court or to explain why it is deviating from precedent.

¶ 89. Applying the clear, binding precedent of this court and the court of appeals, I conclude that the question whether an issue is ripe for judicial determination under the Declaratory Judgments Act lies within the discretion of the circuit court and that this court should review the circuit court's decision to determine whether the circuit court erroneously exercised its discretion.

¶ 90. For the reasons set forth, I write separately.

¶ 91. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

[20] *Wis. Educ. Ass'n Council v. Wis. State Elections Bd. (WEAC II)*, 2000 WI App 89, ¶ 9, 234 Wis. 2d 349, 610 N.W.2d 108 (internal quotation marks omitted).

[21] *Id.*, ¶ 10.

[22] Majority op., ¶ 38.